CHARLES W. GUTHRIE, Respondent, *v.* CHRISTOPHER C. WEAVER, Appellant.

February 14, 1876.

1. Replevin will not lie for a coffin and its contents, when those contents are a corpse.

2. When a coffin, with the consent of all persons having any pecuniary interest in it, has been deposited in the earth for the purpose of interment, with a corpse inclosed within it, it is no longer an article of merchandise.

3. There is no property in a corpse; the relatives have in regard to it, the right of interment; and this right having been once exercised by the father, though against the husband's consent, or by the husband, though against the consent of the father, no right to the corpse remains, except to protect it from insult.

APPEAL from St. Louis Circuit Court.

*Judgment reversed, and judgment in favor of defendant for 1 cent damages and costs.*

*J. Niel,* for appellant, cited: 4 Bradford's Surr., appendix, 503; Gen. Stat. (1865) 663, sec. 1.

*E. W. Pattison,* for respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an action in the nature of an action of replevin, brought under our statute for the claim and delivery of personal property, by the respondent, for a certain metallic casket or coffin, of the value of $90, with its contents, which, it is alleged, were wrongfully taken and detained by the defendant. The affidavit attached to the petition alleges that plaintiff is the owner of the casket, and entitled to its possession; that it was wrongfully taken, and is wrongfully detained, by defendant; that plaintiff's cause of action accrued within one year; and that plaintiff will be in danger of losing his property unless it be taken out of defendant's possession.

A bond was given and the order of delivery granted, and the casket and contents were taken by the sheriff from defendant's lot in Bellefontaine cemetery, where they were interred, and delivered to plaintiff.

The contents of the casket were *the dead body of plaint-iff's wife*, the daughter of defendant.

Under the statute (Prac. Act, Art. 6, sec. 6, Wag. Stat. 1025), if plaintiff states in his affidavit that the property taken was wrongfully taken, and his right of action accrued within one year, defendant shall not be allowed to retain possession, which otherwise he might do on giving a counter-bond.

The answer denies all the material allegations of the petition, and states that Maggie J. Guthrie, wife of plaintiff and daughter of defendant, died on January 25, 1873, at the residence of her father, the defendant, in St. Louis; that defendant owned then, and now owns and possesses, a lot in Bellefontaine cemetery, wherein are interred the mother of deceased and her sister; that the deceased, Maggie, on her death-bed, requested to be buried in said lot, and that plaintiff assented to her request, and that she was so buried with his assent; that deceased was inclosed, by defendant, after her death, in the metallic casket sued for herein, and buried as before stated; and that the casket and body have, in obedience to the process herein, been disinterred by the sheriff, and delivered to plaintiff. Defendant prays that the casket and body be returned to him at the place from whence they were taken, and for damages and costs.

The replication denies that Maggie, the deceased, requested to be buried in defendant's lot, and denies any assent on the part of plaintiff to any such request.

From the evidence in the case it appears that plaintiff and defendant were copartners in a hardware store, under the style of Guthrie & Company; that plaintiff was secretly married to deceased in 1871, and that, some months afterwards, they were openly married, with the consent of defendant; that on her death-bed she desired, in the presence of her husband, to be buried in her father's lot. There is evidence tending to show that she requested a grave to be kept there for husband and child by her side, and that this

was not done. It appears that she died at her father's. house, where her husband was not living, though he was. present at her death. The casket in which she was buried. was selected by her husband and father conjointly. The funeral expenses were paid, as to a small part of them, by goods from the store of Guthrie & Co.; as for the greater part of the expenses, however, it was met by a note of Guthrie & Co., given by plaintiff, which was taken up by the individual note of defendant, which last note was. paid before maturity, without the knowledge and consent. of defendant, by the plaintiff. The undertaker swears that he charged the whole funeral expenses to defendant, and looked to him for pay, he being the person considered most. responsible in a pecuniary point of view. Plaintiff intimated, before the funeral, an intention to remove the body to a lot of his own, when he procured one, and has since interred her in a lot jointly owned by his mother and his brother-in-law. After the funeral the plaintiff and defendant quarreled violently, and plaintiff, in the presence of three young men, shortly before the commencement of this suit, made to the father of deceased certain horrible charges against the deceased and one of her brothers. It further appears that, before the commencement of this action, plaintiff demanded of defendant possession of the casket. and the body of deceased, to reinter them, which was refused. To so much of this testimony as did not touch the question of the value and ownership of the casket plaintiff objected, and excepted duly to its introduction.

The plaintiff asked an instruction to the effect that, if the casket was the property of plaintiff, and withheld from him by defendant, he should recover; also that, if plaintiff bought and paid for the casket, and demanded of defendant to permit the same to be taken up and buried in another lot, he is entitled to recover, even though deceased requested to be buried in defendant's lot. These instructions were refused, and plaintiff excepted.

Defendant asked the court to declare that the pleadings admit that defendant was, prior to his daughter's death, owner of a lot in Bellefontaine cemetery, in which members of his family were interred, and that she was buried there on January 25, 1873, in presence of plaintiff; also that, if there was a valid contract between defendant and plaintiff as to the terms on which deceased was buried in defendant's lot, and a breach by defendant, this form of action is not the remedy; also that, if defendant owned the casket at the date of interment, and the same was with his assent deposited in the grave, with the body of deceased therein, this was a waiver of his right of property therein; also that, if the jury find for defendant, they will find the value of the property claimed, and damages from the time of taking till the date of verdict, and a return of the property to defendant; also that, if deceased on her death-bed requested her father, in her husband's presence and with his assent, to bury her in her father's lot beside her sisters, they will find for defendant, even if plaintiff owned the coffin; also that, if plaintiff owned the coffin, yet if he surrendered it for the burial of his wife, and dedicated it to that use, he cannot recover. The instructions are lengthy; the exact language is not here presented, but their full and exact meaning is given. These instructions were all refused, and defendant excepted.

The court gave the following instructions, of its own motion:

" If the jury find for the plaintiff, they will assess the damages at the sum of one cent. If they find for the defendant, they will assess the value of the property, and damages for the taking and detention of the same by plaintiff. The measure of damages, in case of finding for the defendant, will be interest on the assessed value of the property at 6 per cent. per annum, from the time when such property was taken from the defendant to the time of

trial." To the giving of this instruction the defendant excepted.

The court gave the following instruction, at the instance of plaintiff:

"If the jury believe that the deceased wife of plaintiff, before her decease, requested to be buried in the lot of the defendant, and that plaintiff acceded to that request, yet if they believe that such assent was given upon conditions which have not been complied with or waived by plaintiff, they will find for plaintiff, if they further find that plaintiff bought and paid for the casket." To the giving of this instruction defendant excepted.

At the instance of defendant the court gave the following instruction, and plaintiff excepted:

"If the jury believe from the evidence that the deceased was the wife of the plaintiff, and, in anticipation of her death, made a request of her father, the defendant, that on her death he would place her remains in the same lot or place of interment with her deceased sister, and that the plaintiff knew of such request or was informed of such request before the burial of his wife, or was present at the funeral service at the grave and place of interment of his deceased wife and did not dissent from such place of interment, then the plaintiff is not entitled to recover in this action."

There was a verdict and judgment for plaintiff. The defendant in due time filed a motion for a new trial, which being overruled, the case is brought here by appeal.

It is manifest from what has been said that, in spite of the allegations of the pleadings, this is no dispute for the possession of a burial casket, but a contest for the possession of the mortal remains of the poor lady who lay, when the suit was commenced, in the grave-yard at Bellefontaine. It is shocking to humanity that such a contest should have been carried on in such a manner and through such agencies.

When a human body has been interred with the knowl-
edge and consent of those who, up to that moment, may
have owned the coffin and shroud, these articles are irrevo-
cably consigned to earth, and all property in the purchasers
of them is at an end.    They become mere adjuncts to the
more worthy object, the human body which they serve to
inclose whilst it is resolved into the dust from whence it
springs ; with the coffined clay that they surround, " they
have said to corruption, thou art my father, and to the
worm, thou art my sister and my mother."    They are no
longer property, and their relations with the living are at an
end.    There can be no property in a corpse, and there is
none in the shroud which surrounds it, when that corpse
has been once committed to the tomb.    Of the truth of
these propositions we entertain no doubt.

But waiving that, with what propriety can it be said in
this case that the casket sued for, *and its contents*, were, at
the commencement of the suit, in the possession of defend-
ant, or are now in the possession of plaintiff ?    It nowhere
appears that the defendant owned the fee, or was seized and
possessed of the ground in which deceased was interred.
That ground probably belonged to the Bellefontaine Ceme-
tery corporation ; the defendant evidently had a mere user
in the lot for certain purposes, and the casket was in the
possession of the corporation ; the writ should, therefore,
have been properly addressed to them, if it could have
issued at all.

The sheriff, in our opinion, might properly have refused
to obey such a writ, and should have done so.    It is none
of his business to disinter the dead and to deliver a decom-
posing corpse, under pretext of getting possession of a
metallic casket.

As far as the substantial rights of these parties are con-
cerned—the real matter in dispute between them—though it
is not properly before us, we may say that, in our opinion,
whatever right the husband had to bury his wife terminated

with the burial, and after interment with his consent, or even without it, in the burial lot of her father and family, he had no right to the body at all. This has been decided in Pennsylvania ( *Wynkoop* v. *Wynkoop*, 42 Penn. 293), and with the conclusion arrived at by the court in that case we agree. But, whatever rights the plaintiff may have had, it would be indecent and inhuman to hold that they can be asserted in any such proceeding as this. The action of the court in replevin, under our statute, is summary. On giving the proper bond, and filing the necessary affidavit, the writ goes of course, without any examination into the merits, and if, as in this case, the plaintiff chooses to swear that the property was wrongfully taken, and the cause of action accrued within one year, the defendant cannot retain possession until the day of trial, even though he give a counter-bond. Such an affidavit was made in this case, and was a necessity to obtain the object in view—the possession of this poor corpse; and it was made, as the evidence shows, in the teeth of the facts; for it is conceded on all hands that defendant did not unlawfully take the coffin, but that, with the full assent of plaintiff, he caused his daughter's body to be placed in it, and deposited it in his own tomb. The casket never was for an instant, in any sense, in the possession of plaintiff till after the suit was commenced, nor was it ever unlawfully taken possession of by defendant, nor taken into his actual possession at all. If proceedings of this sort are to meet with judicial sanction, and replevin can be maintained virtually for a corpse, the most sacred feelings are in constant danger of intolerable outrage at the hands of any inhuman wretch who has the audacity to make the attempt. The sanctities of the tomb are hopelessly at the mercy of any one who will swear that he is entitled to the possession of a shroud, and the grave must be opened first, and the question of property determined after the sacrilege is complete. No civilized community would endure such a rule of law as this.

If, then, the plaintiff has any rights in this matter which have been violated, he has his remedy, and those rights can be asserted and maintained; but clearly his remedy is not the one that he pursues in this proceeding, and replevin cannot be maintained for a corpse under the pretext of recovering a coffin.

So far we have no difficulty; but the question presents itself as to the proper judgment to be rendered under the peculiar circumstances of this case. The suit was already executed when the case was reached for trial in the Circuit Court. This poor lady, buried on January 28, 1873, was disinterred on May 19, 1873, and has been reburied in the lot of her husband's mother ever since. If judgment for the defendant be given here, or the cause be reversed and remanded, to be proceeded with below in accordance with this opinion, as defendant in his answer claims the property and demands a return of it, if plaintiff has possession of the property sued for, judgment would be against plaintiff and his sureties that he return the property or pay the assessed value, at the election of defendant, and also damages for the taking and detention, with costs; and the body being now buried—though wrongfully—with the relations of the husband, according to his directions, neither the body nor the coffin can, in our opinion, be lawfully removed against his will. There is no property in a corpse; the relations have, in regard to it, only the right of interment, and this right having been once exercised by the father, though against the husband's consent, or by the husband, though against the father's consent, no right to the corpse remains except the right to protect it from insult. As it is admitted, however, that the coffin and the body are now interred in the lot of the mother and brother-in-law of plaintiff; as they are not only in the grave, but in a grave lot which he does not own even in that limited sense in which a burying lot in a public cemetery is ordinarily owned, they are confessedly not in the possession of the,

plaintiff to return. There is no evidence whatever as to the value of the coffin after it had been used for burying the dead, and, in our opinion, there was no property in it, either in plaintiff or defendant, nor is there any property in it at all in the sense that it could be made an article of merchandise. It has, therefore, no value in money. We think, therefore, that judgment should go in favor of defendant for 1 cent damages and costs.

The judgment of the Circuit Court is accordingly reversed, and judgment entered in this court in favor of defendant for 1 cent damages and costs. The other judges concur.