| 111 | 135 |
| 112 | 687 |
| 111 | 135 |
| 129 | 616 |
| 111 | 135 |
| 143 | 286 |

# Bessemer Land & Improvement Co. v. Jenkins.

*Action of Trespass Quare Clausum Fregit, for Removing Body from Grave.*

1. *Action of trespass quare clausum fregit; description of premises in complaint.*—In an action of trespass *quare clausum fregit* it is not necessary that the complaint should describe the premises trespassed upon with definite particularity ; it is sufficient if the description gives the

defendant such information as will prevent him from being misled or from being uncertain as to the particular premises or close alleged to have been broken or trespassed upon.

2.  *Same; same; averments of complaint in present case.*—In an action of trespass for removing the body of plaintiff's child from its burial place, a complaint which describes the premises as a burial lot in a graveyard near the city of B. in a certain county, which graveyard is now included in the land occupied by a designated manufacturing company, and which had many years before been used and occupied as a graveyard, having been dedicated by defendant as a burying ground, describes the lot alleged to have been trespassed upon with sufficient accuracy, and is not open to a demurrer questioning the sufficiency of such description.

3.  *Same; by whom maintained for disturbing grave.*—One who buries his dead in soil to which he has a freehold right, and to the possession of which he is entitled, can maintain an action of trespass *quare clausum fregit* against any one who digs or disturbs the grave.

4.  *Same; same.*—One who buries his dead in a public cemetery, by the express or implied consent of those in proper control of it, though not the owner of the soil by deed properly executed, acquires such a possession of the lot where the bodies are buried as will entitle him to maintain an action of trespass *quare clausum fregit* against the owners of the fee, or strangers, who, without his consent, negligently or wantonly disturb the graves or remains; but this exclusive right of possession of land to make interments in the particular lot is limited to the time during which the ground constituting the cemetery continues to be used for burial purposes, and upon its ceasing to be so used his only right is that he should have due notice and an opportunity to remove the bodies to some other place of his own selection, if he so desire, or, on failing to do so, that the remains should be decently removed by others.

5.  *Same; irrelevant evidence.*—In an action of trespass *quare clausum fregit* to recover damages for removing the body of plaintiff's child from its burial place upon land owned by defendant but used as a public cemetery, evidence of whom the coffin was bought, the cost thereof, and the amount of the funeral expenses, is wholly irrelevant and immaterial; it not being pretended that defendant knew anything about the funeral or burial, and the real issue in such an action being the rightful possession by plaintiff of the soil where the body was buried.

6.  *Same; same.*—In such an action, evidence as to who dug the grave is illegal and inadmissible, it not being pretended or shown that the person who dug the grave was the agent of the defendant or that the defendant had any thing to do with the digging of the grave or with the burial of plaintiff's child.

7.  *Same; same.*—In such an action the fact that the defendant's agent had knowledge of plaintiff's residence at the time he, without notice to plaintiff, removed the body of plaintiff's child to another

[Bessemer Land & Improvement Co. v. Jenkins.]

burial place, can not be shown by proof of transactions between said agent and plaintiff, which occurred long before he became defendant's agent.

8. *Parol testimony as to what a writing does not contain.*—While a witness will not be permitted to testify to the contents of a writing, unless the proper predicate has been laid, yet he may testify that a certain writing does not contain a particular fact, if at the time of testifying 'he has the writing in his hands; and the secretary and treasurer of a defendant corporation, while holding the minute books of the company in his hand may testify, against the objection of defendant on the ground that the proper evidence was the minutes of the meeting, that no part of a particular report made by officers of defendant at a meeting of the stockholders was rejected by the stockholders, so far as the books showed; there being nothing therein relative to such report or the subject matter thereof.

9. *Evidence tending to show interest of witness in result of suit; relevancy.*—In an action of trespass to recover damages for removing the body of plaintiff's child from its burying place, a witness for the plaintiff's may be asked, if plaintiff has not brought suit against him for the same thing, and if such suit had been fully determined: the evidence sought to be elicited by such question having a tendency, though slight it may be, to show the interest of the witness in the result of the suit against the defendant.

10. *Dedication; relevancy of report of officers tending to show a dedication.*—In an action against a land company, where one of the issues of fact in the case is as to whether there had been a dedication of certain land for burial purposes, the report of the officers of the defendant, made at a meeting of its stockholders, that the directors and officers had selected, inclosed and set aside land corresponding to the land involved for a burial place, is admissible in evidence as being relevant to the issue of dedication.

11. *Same; equitable estoppel as to burying ground.*—The doctrine of equitable estoppel applies with peculiar force to the case where the owner of land has suffered the same to be used as a burying ground in such a way as to lead the public to believe that he has dedicated the same to be used as a public cemetery; and in such a case the owner of the land would be estopped to deny another's right to and possession of the spot of land in which the latter's dead was buried, and could not, any more than a stranger, interfere with or unlawfully desecrate the grave; every principle of fair and conscientious dealing preventing the owner from denying such dedication to the prejudice of those whom he may have misled by his conduct.

12. *Same; action to recover damages for disturbing grave; charge of court to jury* —Where, in an action of trespass to recover damages for removing the body of plaintiff's child from its burying place, one of the issues is as to whether or not the premises in which the burial was had had been dedicated, a charge given by the court of its own motion, is erroneous, which instructs the jury that "the undisputed

[Bessemer Land & Improvement Co. v. Jenkins.]

evidence shows that that lot or cemetery had, prior to the burial of plaintiff's child therein, been dedicated" by defendant for burial purposes; such charge being upon the effect of the evidence and assuming its credibility.

13. *Same; same; measure of damages.*—In an action of trespass *quare clausum fregit* to recover damages for the unlawful removal of the body of plaintiff's child from its burial place, injury to the feelings of the plaintiff constitutes, an element of the damage sustained, and should be taken into consideration by the jury in awarding its verdict.

14. *Action to recover damage for disturbing grave; acts showing possession not sufficient to authorize the institution of suit.*—While the fact that one who buried his child in a certain lot, erected a head board at the grave, put turf around it and planted trees at the head and foot thereof, if done with the knowledge and consent of the owner of the land, tends to show possession by plaintiff, still such acts, without more, do not authorize plaintiff to bring an action against the owner of the land to recover damages for removing the body of his child from its burial place; the right to maintain such action resting upon the original possession of the soil wherein the grave is made.

15. *Same; right of possession; notice of removal; charge to the jury.*— Where, in an action to recover damages for the removal of the body of plaintiff's child from one cemetery to another, there was evidence that though the defendant removed the body without the notice or consent of the plaintiff, or without notice to him to remove it, plaintiff knew or had notice that defendant had discontinued the old cemetery where plaintiff's child was first buried, and parties were requested to remove their dead to the new cemetery provided by the defendant in lieu of the old, a charge is erroneous which instructs the jury that if the plaintiff had actual possession of the soil where the body was buried, he was entitled to recover.

16. *Same; excessive damages.*—In an action of trespass *quare clausum fregit* to recover damages for the removal of the body of plaintiff's child from its burial place, where it is shown that the body was first buried in a place used as a public burying ground but owned by the defendant, and that subsequently the defendant, without the knowledge or consent of the plaintiff, and without notice to him to remove the body of his child, disinterred the body and decently buried it in the new cemetery provided by defendant in lieu of the old, which had been discontinued as a cemetery, a verdict awarding $1,700 damages to the plaintiff is excessive, and should be set aside upon motion properly made.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was an action of trespass *quare clausum fregit*, by James A. Jenkins against the Bessemer Land & Improvement Co. for the unlawful invasion of a burial lot,

without the consent of plaintiff, and exhuming and car-
rying away the body of plaintiff's child.. In the com-
plaint the premises upon which the trespass is said to
have been committed is thus described: "That the lot
or close in which the body of said child was buried is
situated in a burying ground or graveyard near Besse-
mer in said Jefferson county, which burying ground or
graveyard is now included in the land occupied by the
Pipe Works Co. in or near said Bessemer, which said
burying ground or graveyard had been for many years
before that time used and occupied as a burying ground
or graveyard by the public, having been set apart, or
dedicated·by defendant Co. as and for a public burying
ground or graveyard." A demurrer was interposed on
the ground that the premises were not described with
sufficient definiteness. The demurrer was overruled,
and the defendant excepted.

In 1887 the Bessemer Land & Improvement
Company inclosed a certain tract of land belong-
ing to it, situated on 19th street in the town
of Bessemer, and set apart the same as a public burying
ground. This tract of land was used by the public as a
burying ground from 1888 till 1890, but no lots were
sold by the appellant, nor does it seem to have had any
actual charge or control of interments made therein; the
cemetery rights being under the custody of the city en-
gineer of Bessemer, to whom all applications had to be
made. On October 7th, 1888, the appellee, under an
arrangement between himself and one S. E. Jones, had
his child buried· in one of the lots of said cemetery.
Jones was an undertaker and undertook to sell the lot
to appellant, as well as furnish the casket and dig the
grave and inter the body; all of this was done without
the knowledge of appellant, and indeed it appears that
appellant had no actual information that appellee's child
was buried there until the bringing of this suit. In the
early part of 1890 the Bessemer Land & Improvement
Co. contracted to sell the tract of land embraced within
the 19th street cemetery to the Howard-Harrison Iron
Co. The appellant about the same time made a dona-
tion of thirty acres of land about one and a half miles
from the 19th street cemetery to a Cemetery Company,
for use of the citizens of the town of Bessemer, and
arranged with said company that a space should be set

aside for the interment of the bodies that were to be removed from the old burying ground. The building of the plant of the Howard-Harrison Iron Co. on the site of the old cemetery was matter of common knowledge in the town of Bessemer, and the removal of the bodies and the erection of said plant was discussed by the newspaper of said town in several issues prior to the actual removal of the bodies. It further appeared that appellee lived about a mile and a quarter from the old cemetery site, and was a subscriber to the newspaper in which such allusions to the removal of said bodies from the old cemetery to the new one was discussed. The structures erected by the Iron Co. were begun in June, 1890, and were not completed till seven or eight months thereafter, that they were very large and plainly visible from the residence of appellee, and it was common knowledge in Bessemer that the works of said company were being erected on the site of the 19th street cemetery; but no notice was sent to plaintiff (appellee) of intention to remove the body of his child. The plaintiff in the court below testified that the first time he became informed of the removal of the bodies or of the intention to remove them was in the year 1891, and that he never consented to the removal of the body of his child. The body of plaintiff's child along with the others were disinterred in January, 1890, under a contract made to that end between appellant and S. E. Jones, the same undertaker who officiated at the first burial of the child. The testimony further showed that the disinterment and the reinterment were conducted in an orderly and decent manner. It was further shown by the evidence that the new cemetery to which the body of the child was removed was more desirable and better adapted as a burial ground than the 19th street cemetery.

The rulings of the court upon the evidence, which are reviewed on the present appeal, are sufficiently stated in the opinion.

Among the charges asked by the defendant, and to the refusal to give each of which the defendant separately excepted, were the following: (3.) "The court charges the jury that if they believe from the evidence in this case that the only possession Jenkins had of the land wherein the body of his child was buried, consisted in the burial of the child and the subsequent beautifica-

[Bessemer Land & Improvement Co. v. Jenkins.]

tion of his grave, and if the jury further believe from the evidence that Jenkins was never in actual possession of any lot or particular piece of ground in which his child's body was buried, then the jury will find a verdict for the defendant." (4.) "The court charges the jury that if they believe the evidence in this case, they can not award the plaintiff damages for the purpose of compensating for any injury to his feelings." (7.) "The court charges the jury that they can not award the plaintiff damages in this case for injuries to his feelings." (8.) "The court charges the jury that under the evidence in this case, if they believe the evidence in this case, the nineteenth street property described as the old cemetery, was never dedicated by the Bessemer Land & Improvement Company for use as a cemetery."

Upon the return of the verdict, there was a motion made for a new trial, upon the ground that the verdict of the jury awarding $1,700, was excessive. This motion was overruled, and the defendant duly excepted.

Judgment was rendered for the plaintiff, assessing his damages at $1,700 in accordance with the verdict of the jury. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WALKER PERCY, for appellant.—The court erred in refusing to give the general affirmative charge as requested by the defendant. The complaint alleged that the body of plaintiff's child was buried in a burying ground which had been many years previously dedicated by the defendant as a public cemetery. The title alleged in the pleading was that derived from its dedication. There was no dedication shown by the evidence. The intention to dedicate is absolutely essential; and such intention must be clearly and satisfactorily proven. *Meagher v. Driscoll*, 99 Mass. 281 ; 5 Amer. & Eng. Encyc. of Law, 401 ; *Davidson v. Reed*, 111 Ill, 167.

2.    There is no property in a corpse ; the relatives have in regard to it the right of interment, and this having been once exercised, no right to the corpse remains except to protect it against insult.—*Guthrie v. Weaver*, 1 Mo. Appeal 136.    So that from this and many other cases, the law appears to be that the interment of a body in the ground

confers the right not only on the person making the interment but also on the relatives and friends of the deceased to invoke the power of the chancery court to prevent a desecration of the grave..The criminal law punishes the desecration of graves —4 Blackstone 435 ; Code of 1886, § 4023. But the fact of interment of a body which gives the relatives and friends the right to invoke the protection of the grave by the chancery court, does not confer on the person making the interment the actual possession of the ground, or the right to the possession in a court of law.—2 Blackstone, 429.

3. No dedication having been shown, the court erred in refusing defendant's eighth charge, and also erred in its oral charge in stating that "the undisputed evidence shows that that lot or that cemetery on 19th street had prior to the burial of plaintiff's child therein been dedicated by the Bessemer Land and Improvement Company for burial purposes." Not only did the undisputed evidence not show dedication, but appellant contends that there was no evidence tending to show dedication. And this was to defendant's injury because if there was dedication, then under no circumstances could defendant have had the right to remove the body. Whereas, a person making an interment in a cemetery in the absence of a deed properly executed, does so under a mere license. And upon the ground ceasing to be used for burial purposes, all he could claim would be that he should have been duly notified and an opportunity to remove the bodies to some other place of his own selection given, if he desired to remove them himself. And in default of his doing so, that said remains should be decently removed by others.—3 Amer. & Eng. Encyc. of Law, 50. And on the same principles, there being evidence tending to show knowledge on plaintiff's part of the intended general removal of the bodies, and acquiescence therein, and decent removal and re-interment, the court should have given the ninth charge requested by the defendant.

4. In the absence of the element of damages resting on a breach of contract, and in the absence of any actual injury to the person, reputation, or estate of the plaintiff, there can be no recovery for injury to the feelings.—*Telegraph Co. v. Wilson,* 93 Ala. 35. Therefore, the court erred in refusing defendant's fourth and sev-

[Bessemer Land & Improvement Co. v. Jenkins.]

enth charges, and in giving that portion of the oral charge relating to damages for injury to plaintiff's feelings.

5. The court erred in not granting defendant's motion for a new trial. Even if plaintiff had the right to recover, the damages assessed were excessive. While as a naked proposition, the desecration of a*grave and disinterment of a corpse would warrant the imposition of severe punitive damages, yet the undisputed evidence in this case showed that the trespass here committed, if in fact a trespass was committed, was done with no intention to outrage the feelings, with no wantonness and no malice. The disinterment was not made stealthily, and was not conducted indecently. Thirty acres of ground were donated by the defendant company in a desirable locality for cemetery purposes. Provisions were made for the suitable and decent interment therein of the bodies removed from the 19th street cemetery. An effort was made to ascertain the wishes of those having dead buried in the cemetery on the subject of removal, and the mayor informed the appellant company that it was the desire of those whom he had seen to have the change made.

CABANISS & WEAKLEY and B. L. HIBBARD, contra.—1. The legal title is not necessary to maintain an action of trespass quare clausum fregit. Trespass is an injury to the possession. The gist of the action is the disurbance of possession, and possession without title is sufficient generally to maintain it.—Finch v. Alston, 2 Stew. & Port. 83 ; Brewer v. Dew, 11 Mess. & W. 625 ; Merest v. Harvey, 5 Taunt. 442.

2. A party peaceably in possession may maintain. trespass for an injury to his possession though the trespasser has a better title to the land.—Larne v. Russell, 26 Ind. 386; Sweetland v. Stetson, 115 Mass. 49 ; 28 Amer. & Eng. Encyc. of Law, 586 ; Brown v. Manter, 22 N. H. 468 ; Rogers v. Brooks, 99 Ala. 31.

3. When a body has once been buried, no one has a right to remove it, without the consent of the owner of the grave, or leave of the proper ecclesiastical, municipal or judicial authority.—3 Amer. & Eng. Encyc. of Law, 53; Wynkoop v. Wynkoop, 42 Pa. St. 293 ; Weld v. Walker, 130 Mass. 42.

4. The unlawful disinterment of a dead body consists, not merely in its removal, but in removing it without the consent of the deceased, given in his life-time, or of his near relatives, given since his death.—*Tate v. State*, 6 Blackf. (Ind.) 110; *State v. McClure*, 4 Blackf. (Ind.) 328.

5. When land has been once dedicated for burial purposes, and the dedication has been accepted, the one making such dedication is prohibited from defacing or meddling with the graves.—*Beatty v. Kurtz*, 2 Pet. 585; *Davidson v. Reed*, 111 Ill. 167; *Boyce v. Kalbaugh*, 47 Ind. 334. The record shows clearly a dedication of the cemetery to the public and its acceptance. There is evidence tending to show a sale of a lot to Jones for burial purposes. He sold a space for a grave to plaintiff who took and held possession by burying his child therein and by beautifying and marking the grave. Under these circumstances Jenkins could have prevented by injunction the interference with the grave.—*Davidson v. Reed*, 111 Ill. 167; s. c. 53 Amer. Rep. 613.

6. Damages should be given as compensation for wounded feelings, whenever the tort complained of consists of some voluntary act or very gross neglect, and it is for the jury to determine each case upon its own surroundings, because the only safe rule of damages in matters of feelings, is to give what, to the ordinary apprehension of impartial men, would seem proportionate to an injury which must be measured by the instincts of our common humanity.—*Detroit Daily Post Co. v. McArthur*, 16 Mich. 447; *Welch v. Ware*, 32 Mich. 84; 1 Sutherland on Damages, 734, 735; *Meagher v. Driscoll*, 99 Mass. 281; *Renihan v. Wright*, (Ind.) 9 L. R. Ann. 514; *Larson v. Chase*, (Minn.) 14 L. R. A. 85. The jury may take into consideration every circumstance of the act which injuriously affected the plaintiff, not only in his property, but his person, his peace of mind, and his individual happiness.—*Taber v. Hutson*, 5 Ind. 322; 61 Amer..Dec. 96.

7. Whenever a body is once buried, and the place marked so as to indicate that it is the last resting place of human remains, so long as there are any marks, such as head stones, head board, tombstone, monuments, shells, pebbles, or trees indicative of the fact, any one disturbing or molesting the grave without the consent of the

owner or nearest kin is a trespasser, and subject to damages at the suit of the said relatives.—*Pattello v. Alexander*, 22 S. E. Rep. 651.

HARALSON, J.—1. The close alleged to have been broken by defendant is not described in the complaint with definite particularity, but sufficiently so to prevent the defendant from being misled or uncertain as to the particular *locus in quo* of the trespass complained of. If a more accurate description had been made, it would have given the defendant no better information as to the *venue* of the realty, than that furnished by the complaint.—2 Chitty on Pl., 609 The demurrer, which questioned the sufficient accuracy of the lot or close which plaintiff alleges defendant broke and trespassed on, was properly overruled.

2. The case was tried on the two pleas of "not guilty," and "that at the time of said alleged trespass, the defendant had the rightful possession of the land on which said trespass is alleged to have been committed." There were other errors assigned on account of the rulings of the court on the pleadings, which have not been insisted on in argument, and will be treated as waived.

3. Exactly what the rights of one are to the burial place of his dead—in the absence of a fee to the soil, or his right to the possession thereof—as respects the maintenance of a civil action for its disturbance, is one of delicate and, as yet, not very satisfactory solution. People have so much respect for the final resting place of the dead, and there is so little to tempt one to disturb their repose, cases are of rare occurrence where such disturbances have become the subject of litigation and the adjudication of the courts. Those that have arisen, have generally, as in this case, grown out of the removal of the dead from one place to another, for purposes, as claimed, of health, convenience, or the better care, preservation and ornamentation of these burial places.

Cooley, in his work on Torts, says: "In respect to the burial of the dead, if any where, shall we find in the common law a recognition of the legal rights of the family as an aggregate of persons. Even in that case, however, the recognition is very faint and uncertain.

[Bessemer Land & Improvement Co. v. Jenkins.]

An unlawful interference with the buried dead of a family, might probably be restrained by injunction on their joint application, and the owner of the lot in which the body was deposited might maintain *trespass quare clausum fregit* for its disinterment, and recover substantial damages, in awarding which the injury to the feelings would be taken into consideration;" and he adds, that the common law did not recognize the bodies of the dead as property, belonging to the surviving relations, "though it did recognize a property in the shroud or other apparel of the dead as belonging to the person at the charge of the funeral."—Cooley on Torts, 239–40.

Blackstone in his Commentaries, referring to the subject, says: "But though the heir has a property in the monuments and escutcheons of his ancestors, yet he has none in their bodies or ashes; nor can he bring any suit or action against such as indecently, at least, if not injuriously, violate and disturb their remains, when dead and buried. The person indeed who has the freehold of the soil, may bring an action of trespass against such as dig and disturb it; and if any one in taking up a dead body steals the shroud or apparel, it will be felony, for the property thereof remains in the executor, or whoever was at the charge of the funeral."—1 Blackstone Com., 429.

It seems to be very generally agreed that a dead body is not the subject of property rights, and becomes, after burial, a part of the ground to which it has been committed, and that an action *qua e clausum fregit* may be maintained by any person who has the fee to the soil, if entitled also to the possession, against one who digs and disturbs the grave. But to entitle one to this action, he must have the actual or constructive possession of the soil.—*Meagher v. Driscoll*, 99 Mass. 284; *Wild v. Walker*, 130 *Ib*. 422; *Guthrie v. Weaver*, 1 Mo. App. 136; *Page v. Symonds*, 63 N. H. 17; *Shipman v. Baxter*, 21 Ala. 456; *Ledbetter v. Blassingame*, 31 Ala. 496; *McInerny v. Irvin*, 90 Ala. 276; 3 Am. & Eng. Encyc. of Law, 54; *Bonham v. Loeb*, 107 Ala. 604.

When one buries his dead, therefore, in soil to which he has the freehold right, or to the possession of which he is entitled, it would seem there is no difficulty in his protecting their graves from insult or injury, by an ac-

OF ALABAMA. · 147

tion of trespass against a wrongdoer. But, bodies are most commonly interred in public cemeteries, where the parties, whose duty it is to give them burial, are not the owners of the soil by deed properly executed, and have no higher right, than a mere easement or license. Of such it is held, that they do so under a mere license, and their exclusive right to make such interments in a particular lot, would be limited to the time during which the ground continued to be used for burial purposes; and upon its ceasing to be so used, all they could claim would be, that they should have due notice and an opportunity to remove the bodies to some other place of their own selection, if they so desire, or on failure to do so, that the remains should be decently removed by others —3 Am. & Eng. Encyc. of Law, 50, and authorities cited; 1 Wash. on Real Property, § 33.

In *Partridge v. First Ind. Ch. of Balt.*, 39 Md. 637, a case of one who buried in a church cemetery under license from the trustees, it was held, that while the license continued, the grantee could bring trespass or case for any invasion or disturbance of the grave, whether done by the grantors or strangers. But it was said: "If in the course of time it should become necessary to vacate the ground as a burying ground, all that he could claim, in law or equity, would be that he should have due notice and the opportunity afforded to him of removing the bodies and monuments to some other place of his own selection, or that, on his failing to do so, such removal should be made by others."—1 Wash. on Real Property, § 33; *Kincaid's Appeal*, 66 Penn. St. 411.

In *Page v. Symonds*, 63 N. H. 17, it was said: "Such right of burial is not an absolute right of property, but a privilege or license, to be enjoyed so long as the place continues to be used as a burial ground, subject to municipal regulation and control, and legally revocable whenever the public necessity requires. It is a right of limited use for purposes of interment, which gives no title to the land," analogous to the grant of a pew in a meeting-house, and resembling a pew tenancy.—*Craig v. First Pres. Ch.*, 88 Penn. St. 42; *Kincaid's Appeal*, 66 Penn. St. 411, *supra; Windt v. The German R. Ch.*, 4 Sandf. 471; *Richards v. Dutch Ch.*, 32 Barb. 42; *Sohier v. Trinity Ch.*, 109 Mass. 1; *Bryan v. Whistler*, 8 B. & C. 288; *Wood v. Leadbetter*, 14 M. & W. 837. It would

seem, therefore, to accord with right principle and authority, that where one is permitted to bury his dead in a public cemetery, by the express or implied consent of those in proper control of it, he acquires such a possession in the spot of ground in which the bodies are buried, as will entitle him to action against the owners of the fee or strangers, who, without his consent, negligently or wantonly disturb it. This right of possession will continue as long as the cemetery continues to be used; but if, for proper and legal reasons, it should be discontinued, and the license withdrawn, and the bodies of the dead are to be removed, it must be done decently, only after due notice to the party entitled, if known, and such notice can be given.

4. A dedication of land has been defined to be the act of devoting or giving of the property to some public object in such manner as to conclude the owner.—*Forney v. Calhoun County*, 84 Ala. 220 : 5 Am. & Eng. Encyc. of Law, 395. It may be done verbally or by writing, by a single act or a series of acts, if clear and unequivocal, as indicating the owner's intention. But a presumption of dedication will not follow from mere user, without more, for any period short of twenty years.—*Steele v. Sullivan*, 70 Ala. 589; *Forney v. Calhoun County*, 84 Ala. 215. In the latter case it was said : "The doctrine of equitable estoppel applies with peculiar force to cases of this kind. When the owner of land involuntarily, or by culpable negligence, leads the public to believe that he has dedicated it to a public use, he will upon every principle of fair and conscientious dealing, be estopped from denying the fact of such dedication to the prejudice of those whom he has misled. *  *  *  *  *  *  *  * To be effective and valid, a dedication [as was there held] must be accepted, and such acceptance may be shown either by some positive conduct of the proper public officers, evincing their consent in behalf of the public, or may be inferred from official acts of implied recognition on their part, or by long public use, or from the beneficial nature of the dedication."—*Gage v. M. & O. R. R. Co.*, 84 Ala. 224.

5. Making application of these principles to the errors assigned, and it appears, that the question to the plaintiff on his examination as a witness in his own behalf, by his counsel,—"Whom did you buy that coffin

[Bessemer Land & Improvement Co. v. Jenkins.]

from?''—the one in which the child was buried,—was wholly irrelevant to the case against the defendant company. It was not pretended that it knew when or from whom the coffin was purchased, or that the corpse of the child was even put in it and buried. It was calculated to confuse, by withdrawing the minds of the jury from the real issue,—the rightful possession of the soil by plaintiff.

6. And on the same grounds, the several objections to the introduction of the receipt of S. E. Jones, showing the cost of the casket, the digging of the grave, the shroud and carriages for the funeral, and that these items had been paid by the plaintiff, should have been excluded.

7. The question,—''Who had the grave dug?''—was illegal. The answer was, that S. E. Jones had it done. It was not pretended, nor was it shown, that Jones was the agent of the defendant, or that it had anything to do with the digging of the grave. If the land had been dedicated for the purpose of a public cemetery, as alleged in the complaint, and the plaintiff had burial rights therein in consequence, it was wholly immaterial who dug the grave. If it had been shown that Jones was the agent of the defendant in the digging of the grave, the evidence might, perhaps, have been properly admitted. And so it was improper to allow the plaintiff to prove, that far back, before the burial of the child, he had sold plaintiff a bed-room set of furniture. If it tended to show that Jones knew plaintiff and had knowledge that he resided in Bessemer, the transaction occurred before Jones had any agency of defendant for the removal of the bodies from the old to the new cemetery.

8. McNutt, who was the secretary of the defendant company, at the time, testified that the old cemetery—the one in which plaintiff's child was buried—was enclosed in the latter part of 1887, by order of Mr. Berney, the vice-president of the company, and was used as a burying ground from that time until some time in 1890, during which time it was in the hands of the engineer of the city of Bessemer, and parties wishing to bury in it, were referred by the company, to said engineer. It was shown, that at the first annual meeting of the stockholders, a report was made by the directors or officers in charge, reciting, among other things, that

"a convenient, eligible and picturesque site for the burial of the dead is always a source of gratification and pride to citizens, as well as attractive, and favorable comment to visitors. Such a location, the company selected and set aside for the purpose, and has had it suitably inclosed, laid off into lots, drives and walkways, at an expense of $585.89. In time, by small charges for interment plots, the expense of its continued ornamentation and improvement will be more than met." The question was propounded to the witness, "Was any part of the report rejected by the stockholders at that meeting?" This was objected to on the ground, "that the only proper way to prove the action of the stockholders' meeting was by the minutes of the meeting." The question was allowed, and the witness answered, that no part of it was rejected. It will be noticed, that the question and answer did not refer to what particular action was taken on the report, but rather, that no action was taken at all. There is a difference in testifying to what appears on a minute book, without its production, and testifying that a particular thing does not appear on the minutes, especially if the minute entries are in the hands of the witness when testifying. The witness had the books, as it appears, and testified that there was "not a word in the minutes of any of the meetings of the directors or stockholders of the company, relating to the cemetery on 19th street"—the one in question. The books being in the hands of the secretary and book-keeper of defendant, it was not improper for him to testify, against defendant's objection, that no part of the report was rejected, so far as the books showed. The defendant, whose books they were, might have shown by their introduction, that this statement, if untrue, was incorrect. The report itself was not subject to the objection of irrelevancy. It tended to prove the fact of dedication as averred in the complaint.

9. The question propounded to the witness Jones— "Has suit been brought against you by Mr. Jenkins, the plaintiff in this case, growing out of the removal of the same body, and has that suit been finally determined?"—should have been allowed to be answered. Its tendency was, if slight, to show the interest of the witness against the defendant.

10. There was no error in refusing the general charge

for defendant. . Its giving is sought to be justified on the ground, that the evidence showed without conflict, that the defendant had not dedicated this property for burial purposes; that plaintiff, therefore, derived no right to the soil in which the grave was dug, and that the allegations of the complaint, that there was a dedication and consequent right growing therefrom, had failed. But, the proofs referred to above do tend to show a dedication; that the dead of the community, including plaintiff's child, were buried in the cemetery with the knowledge, consent and license of defendant, and that the plaintiff and the public generally, were encouraged to bury their dead there. If this was true, the defendant would be estopped to deny plaintiff's right to and possession of the spot of land for the purposes used, and it could not, therefore, any more than a stranger, unlawfully interfere with or desecrate it.— Davidson v. Reed, 111 Ill. 167. For like reasons, the 8th charge requested by defendant was properly refused.

The court upon its own motion, charged the jury that "The undisputed evidence shows that that lot or that cemetery on Nineteenth street had, prior to the time of the burial of plaintiff's child therein, been dedicated by the Bessemer Land Company for burial purposes." This charge assumed the credibility of the evidence—a question for the jury—and was upon its effect, without request, and was, for these reasons certainly, erroneous.

11. There was no error, under the evidence, in refusing charges 3, 4, and 7. It is nowhere denied, that in actions of this character, when maintainable, the injury to the natural feelings of the plaintiff may be taken into consideration in estimating the damages.—Cooley on Torts, 240; 3 Am. & Eng. Encyc. of Law, 54; Meagher v. Driscol, 99 Mass. supra.

12. The fact that plaintiff erected a head-board at the grave and put turf around it, and planted two cedar trees, one at its head and the other at its foot, if done with the knowledge and consent of defendant, which is not shown, would tend to show possession by plaintiff; but these acts of his, without more, would not authorize him to bring this action, as was assumed by the court in its oral charge to the jury. It made too much of these facts. The right to maintain the action rested on other and higher considerations.

13. There was evidence tending to show, that plaintiff had such actual possession of the plot of ground, as authorized him to bring this suit, if his possessory rights were invaded. There is no dispute as to the fact, that Jones, the undertaker, was employed by defendant, to remove the bodies of the dead from the old to the new cemetery, and that he did dig up and remove the plaintiff's child's remains ; and it tends to show that this was done without the knowledge or consent of the plaintiff, and without notice to him to remove them himself. But, there was also evidence tending to show, that plaintiff did know or have notice, that defendant had discontinued the old cemetery, and parties were requested to remove their dead to the new one provided by the company in lieu of the old. There was error, therefore, in that part of the court's oral charge, which reads, "If the plaintiff had actual possession, why, then I charge you as a matter of law, that the plaintiff in this action would be entitled to recover."

14. There was a motion for a new trial, on the ground, among others, that the verdict of the jury for seventeen hundred dollars, was excessive. We do not hesitate to say, that these damages, under the evidence in this case, were excessive, and that the verdict for that reason ought to have been set aside.

15. We have noticed only such of the many errors assigned as have been insisted on. What has been said of these, will be sufficient for the purposes of another trial.

Reversed and remanded.