**Ida Mae WHITEHURST, etc., Plaintiff-Appellant,**

v.

**Edward L. WRIGHT, Jr., etc., et al., Defendants-Appellees.**

**No. 77–1098.**

United States Court of Appeals, Fifth Circuit.

April 5, 1979.

---

Donald V. Watkins, Tyrone C. Means, Montgomery, Ala., for plaintiff-appellant.

Robert C. Black, William I. Hill, II, Montgomery, Ala., for defendants-appellees.

Before MORGAN, RONEY and VANCE, Circuit Judges.

VANCE, Circuit Judge:

Bernard Whitehurst was gunned down by Montgomery, Alabama police who mistook him for a suspect in a local robbery. The fatal shot was fired by police officer Donald Foster, who claims that Whitehurst shot first. Although none of the officers in the vicinity found a gun near the body, a detective subsequently called to the scene spotted a gun twenty-seven inches from the victim. It was later discovered that the gun had been confiscated by police in a drug raid occurring over one year prior to the Whitehurst shooting. This odious sequence of events shook the entire Montgomery law enforcement community and precipitated the resignation of the city's mayor, its public safety director and several of its police officers. This civil rights action resulted.[1]

Ida Mae Whitehurst, mother of the deceased and administratrix of his estate, brought suit under 42 U.S.C. §§ 1983, 1985 and 1986,[2] claiming that the fatal shooting

---

1. The matter was presented to both federal and state grand juries, but no indictment was returned.

2. Title 42, U.S.C. § 1983 provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Title 42, U.S.C. § 1985 provides

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Title 42, U.S.C. § 1986 provides

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are

and alleged cover-up, accomplished under color of state law, deprived her son of rights guaranteed by the fifth, sixth, thirteenth and fourteenth amendments to the United States Constitution. The district court found that her claim under § 1983 for the purported cover-up did not exist, since if it took place at all, it was subsequent to Whitehurst's death, and consequently could not have deprived him of any rights. The court also determined that no claim was stated under § 1985 because any conspiracy to violate Whitehurst's civil rights ended with his death and could not be retroactively established. The court then granted summary judgment in favor of all defendants involved in the investigation of the shooting. A directed verdict was granted in favor of James Robinson, mayor of Montgomery, who had been charged with gross negligence in hiring Foster and in retaining him on the police force. A jury returned a verdict exonerating Foster and his superiors, Ed Wright, public safety director, and Charles Swindall, chief of police, from liability for Whitehurst's wrongful death.

On appeal, Mrs. Whitehurst alleges that the trial judge erred in refusing to recognize the actionability of the cover-up claim under §§ 1983 and 1985 and in using that refusal as a basis to grant summary judgment in favor of the defendants who investigated Whitehurst's death. She also contends that the district judge erred in directing the verdict in favor of the mayor; in failing to recuse himself; and in refusing to admit certain evidence offered by plaintiff to impeach her own witness.[3] After considering the record and arguments advanced by both parties, we conclude that we must affirm.

## Motion for Recusal

Appellant filed a motion for recusal under 28 U.S.C. § 455(b)(1),[4] claiming that the trial judge displayed personal bias during a hearing on a motion to dismiss the police chief and public safety director as defendants. The bias was presumed from the trial judge's remark that "it bothers me a good deal that people get sued for doing their duty."[5]

about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . ..

3. Also alleged as error is the failure of the lower court to give certain jury instructions. We find this contention to be without merit.

4. That section requires a judge to recuse himself "[w]here he has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(b)(1).

5. The statement was made in the following context:

THE COURT: . . . Now, do you have any evidence that [the police chief and public safety director] participated in or knew of the shooting?

MR. WATKINS: Not fully at this time because—(interrupted)

THE COURT: Well, it may be a little premature for me to ask that question, I realize that.

MR. WATKINS: Discovery has been halted in the case.

THE COURT: Do you have any evidence that tends to show that they knew that the man [the police chief and public safety director] were pursuing—that their underlings were pursuing was not the man described to the police officers, that his features were different, anything of that?

MR. WATKINS: You are talking about at the time they were riding towards the scene they knew this was not the person? No, sir, I wouldn't say that. (Pause in time) Your Honor, these questions—(interrupted)

THE COURT: I just don't believe that you can tie somebody into a crime—I don't mean a crime, I mean a cause of action, after it's all over such as you are trying to do with these two people. They had a duty to pursue a criminal and insofar as we know, and I think we know a great deal about this case from what I have read in the newspaper, the people who were not participating directly in the chase thought that they were pursuing a criminal. I think Chief Wright and Chief Swindall did.

THE COURT: . . . you are trying to tie two people into a wrongful death who really didn't do anything unlawful but were actually firmly pursuing the duties that the law placed on them, and you are suing these fellows, and that's all you have. And this is a dangerous situation.

MR. WATKINS: The only point we would make is that we will submit to the Court that

Although the general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources, *see, e. g., United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Curl v. International Business Machines Corp.,* 517 F.2d 212 (5th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), this court has recognized that

> there is an exception where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party.

*Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1051 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). Thus, the single fact that the judge's remarks were made in a judicial context does not prevent a finding of bias. We cannot conclude, however, that the remarks made here evidence any bias, let alone the "pervasive bias" that must be shown to disqualify a judge for his statements made in a judicial setting.

The trial judge merely commented on the lack of evidence presented by the plaintiff to show these defendants' participation in the Whitehurst shooting. The remarks appear to have been based solely on impressions obtained during the hearing and were not part of a prejudicial attitude maintained by the judge prior to the institution of the proceeding.

Appellant's position is not aided by 28 U.S.C. § 455(a), which mandates recusal in any situation in which the judge's partiality might reasonably be questioned. This section interjects a reasonable man standard into the determination of whether the judge should disqualify himself. *Parrish v. Board of Commissioners of Alabama State Bar,* 524 F.2d 98 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). *See generally,* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3542 (1975). There is no basis for a reasonable man to believe that the trial judge was biased in this instance. The judge refused to grant the defendants' motion to dismiss and gave plaintiff the opportunity to develop the evidence in her case against them. The trial judge displayed no bias and none can be inferred.

### Directed Verdict

The trial court granted Mayor James Robinson's motion for directed verdict after finding that the plaintiff failed to show the mayor's knowledge of any violent tendencies possessed by Officer Foster. Appellant contends that this is an erroneous statement of the standard to be applied in determining whether supervisors are guilty of gross negligence in hiring and maintaining dangerous employees on their staffs.

Mrs. Whitehurst asserts that the correct test is whether the supervisor knew or should have known of his employee's propensity for violence, citing *Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976) as support. The *Sims* opinion, however, is of little help to appellant's contention. That case reversed a district court's dismissal for failure to state a claim, Fed.R.Civ.P. 12(b)(6). After reviewing the pertinent law in the area, the court found a claim to exist when a supervisor breaches his duty "to control a policeman's *known* propensity for improper use of force." *Sims, supra,* at 832 [empha-

---

the cause of action does not stop at the death, and when you have individuals who are trying to defeat the cause of action by covering up what actually transpired at the death scene then that's a further extinuation [sic] of the conspiracy. And we think that evidence will show that these people actively tried to defeat the circumstances.

THE COURT: Well, the purpose of the conspiracy as you allege it was effected before these people got into the conspiracy, as I see it. The purpose of the conspiracy was to

deprive Whitehurst of his life, according to your allegation. Now, that conspiracy had been effected before Wright and Swindall ever got into the conspiracy according to your allegations, as I understand it. Now, if there is some way you can amend that so as to get them in it is my duty to let you do it, as I understand the law, but I don't think people ought to be sued lightly. To be sued within itself is a pretty severe punishment and it bothers me a good deal that people get sued for doing their duty.

sis supplied]. The court did not mention whether a claim existed if a supervisor should have known of his employee's violent nature. We have been unable to find any authority for appellant's proposition. Indeed, a review of several similar cases leads us to conclude that the trial judge applied the correct standard. *Chestnut v. City of Quincy,* 513 F.2d 91 (5th Cir. 1975); *Russ v. Ratliff,* 538 F.2d 799 (8th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977).

■ Even if we were to assume that appellant's statement of the applicable standard is correct, we are unable to find that the trial court erroneously directed the verdict. In *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969), this court announced that a directed verdict would be sustained if, based on all the evidence presented, reasonable men would have been unable to arrive at a contrary verdict. Not only did plaintiff fail to offer any proof that Foster was a violent person, but she also failed to show that Mayor Robinson knew or should have known of any violent tendencies Foster may have possessed. Mrs. Whitehurst relies heavily on the fact that Foster had on several occasions used force to effect arrests and that those instances had been reported to Foster's superiors, as was required by police regulations. These reports, however, only showed that Foster used sufficient force to apprehend the suspects. He was reprimanded in only one episode in which he handcuffed a suspect when he thought she was going to strike him.

Mrs. Whitehurst also failed to show that Robinson "should have known" of these arrest reports. She submits that the records of forcible arrests were filed in a room down the hall from the mayor's office and that the mayor had access to those files. She does not allege, however, that Robinson ever inspected or had a duty to inspect the files. After considering the evidence thus presented, we determine that the directed verdict was properly granted.

### Impeachment of Plaintiff's Witness

■ Mrs. Whitehurst contends that the trial court erroneously refused to allow her to impeach her own witness, in violation of Fed.R.Evid. 607. The witness, Detective Cecil Humphrey of the Montgomery Police Department, was called solely to establish whether he had fired the single spent round in the gun found next to Whitehurst's body. Humphrey denied that he had fired the gun, and Mrs. Whitehurst was aware that he would so testify. Nevertheless, she called him to the stand with the express purpose of impeaching him with an out of court statement made by Humphrey to his friend, Lt. J. C. Cunningham, to the effect that he had fired the gun.[6]

While it is now proper for a party to impeach his own witness, Fed.R.Evid. 607,

> impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible.

*United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975). *See State of Mississippi v. Durham,* 444 F.2d 152 (5th Cir. 1971). Here, the statement made to Cunningham is hearsay and is generally inadmissible for substantive purposes. Fed.R.Evid. 801(c), 802.[7] Mrs. Whitehurst asserts on appeal

---

**6.** The following colloquy took place prior to the direct examination of Humphrey:

MR. WATKINS: . . . we expect the evidence to show that Mr. Humphrey actually retrieved the gun from the scene and has reported to a J. C. Cunningham that he checked the gun at that point, saw that it had not been fired and fired the gun, one round, so that the gun would appear to have been fired at some point between the time he retrieved the gun at the scene and the time he arrived with the gun at police headquarters.

MR. BLACK [defense counsel]: You deny that, don't you?

MR. HUMPHREY: That's right, I don't know what he is talking about.

MR. WATKINS: Then we would like to call J. C. Cunningham behind him.

**7.** Because the statement was offered only for impeachment purposes, we make no determination as to its admissibility under Fed.R.Evid. § 803(24). *But cf.* Fed.R.Evid. 801(d)(1)(A) (prior inconsistent statement given under oath

that she would have called Lt. Cunningham "to establish Humphrey's role concerning the pistol firing . . . ." To use a prior inconsistent statement in that manner exceeds the scope of impeachment, and is an attempt to use hearsay evidence for substantive purposes. We do not believe that the rules of evidence espouse such a revolutionary approach to circumvent the traditional principles of hearsay.

■ Even if we were to assume that the impeachment testimony was erroneously excluded, the error does not mandate reversal in this case. Reversal is not required unless the lower court's action is inconsistent with substantial justice. Fed.R.Civ.P. 61; Fed.R.Evid. 103. Here, Mrs. Whitehurst suffered no prejudice from the refusal to allow her to impeach her own witness. Had the prior inconsistent statement been allowed, it would have been accompanied by an appropriate instruction to the jury that the statement could not be used to prove the truth of its substance, but only to destroy the credibility of the witness. Thus, the only harm suffered by Mrs. Whitehurst was the opportunity to show that the witness she called could not be believed. Substantial justice was not denied by the exclusion of such evidence.

### Actionability of the Cover-up

■ The trial court correctly ruled that the events occurring *post obitum* could form no part of the deceased's 42 U.S.C.

§ 1983 or § 1985 action. The essence of a claim under either section is the deprivation of a *person's* constitutional rights. Here, the events of the alleged cover-up took place after Bernard Whitehurst had been shot and killed.[8] No allegation was made that any conspiracy to kill Whitehurst or to cover up the event existed before the shooting took place. After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived.[9] A claim in this instance was properly denied.

Despite the inherent illogic of recognizing a claim for deprivation of a corpse's "rights," Mrs. Whitehurst advances policy reasons for recognizing a claim in this instance. She notes two cases that have recognized a cover-up claim as the basis for § 1983 actions. *Hampton v. City of Chicago, Cook County, Illinois,* 484 F.2d 602 (7th Cir. 1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *Bargainer v. Michal,* 233 F.Supp. 270 (N.D.Ohio 1964). Although both of these cases were brought by the persons against whom the cover-up was effected, Mrs. Whitehurst submits that *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961) recognized that those who die as a result of police brutality should be accorded the same rights as those who merely suffer physical injury. *Brazier,* however, was concerned with whether violations of civil rights causing death give rise, under § 1983, to wrongful death ac-

---

may be used substantively when declarant is testifying at trial and is subject to cross-examination concerning the inconsistent statement).

**8.** The fact that the gun found next to Whitehurst's body had been confiscated in a prior drug raid was brought before the jury as proof that Whitehurst could not have fired first, and thus was wrongfully killed. This apparently did not affect the outcome of her wrongful death action.

**9.** Neither party has pointed to any case that recognizes or refuses to recognize the civil rights of a corpse. Appellees' brief, however, does call to our attention *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), which found that a fetus is not a person under the 14th amendment and has no rights thereunder. From that principle, appellees forcefully argue that if a being capable of sustaining life

in the future is not a person, *a fortiori,* a corpse, having no potential for life is not a person within the protection of our constitution.

The argument that a corpse has no civil rights is further strengthened by the treatment of actions involving interference with dead bodies, *e. g.,* mutilation, *Palmquist v. Standard Acc. Ins. Co.,* 3 F.Supp. 358 (S.D.Calif.1933); interference with burial, *Brown Funeral Homes & Ins. Co. v. Baughn,* 226 Ala. 661, 148 So. 154 (1933); disturbance of the burial site, *Bessemer Land & Improvement Co. v. Jenkins,* 111 Ala. 135, 18 So. 565 (1895). Although a cause of action exists in each situation, the claim belongs to the survivor of the deceased. If the corpse were an entity capable of possessing rights, the action would belong to him or to his personal representative.

tions as well as whether claims for damages sustained during the decedent's lifetime survive in favor of his personal representative. We concluded that in order to give full effect to the Civil Rights Act, such actions must be recognized if applicable state law so provides.[10] *Brazier* did not create any new claims where none had existed before; it merely recognized that certain civil rights actions survive the death of the victim.

Mrs. Whitehurst argues that in refusing to recognize a claim here, we will "foster police misconduct subsequent to the death of a victim of police brutality." We do not agree. Our holding is not that cover-up of a wrongful death is without civil or criminal effect. The question presented in the court below and in this court was whether events occurring after his death constituted a deprivation of her son's constitutional rights for which plaintiff has stated a claim. It was on this precise question that the trial court ruled, and we conclude that its ruling was correct.

AFFIRMED.

---

**10.** In *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), the Supreme Court held that state survival law is to be followed in determining whether pending § 1983 actions survive in favor of the decedent's representative. That holding presents no issues in the case *sub judice.*