# Reed *v.* Mayor & Aldermen of Birmingham.

*Bill in Equity by Municipal Authorities for Injunction against Obstruction of Street as Nuisance.*

1. *Injunction againt obstruction of street as nuisance.*—The permanent obstruction of a public street in a city is a public nuisance, and a court of equity will abate it at the suit of the municipal authorities.

2. *Dedication of public streets in projected city; estoppel against purchaser.*—If the owners of a large tract of land at the intersection of two railroads have a survey, map and plat made of it, with a view to establishing a city or town, dividing and sub-dividing it into blocks and lots, separated by streets and avenues, all marked on the map, there is no dedication of the streets to the public use until a sale is made with reference to the plat and map; but the first sale, with a conveyance to the purchaser, in which the centers of the surround-

92 | 339
93 | 531

92 | 339
95 | 126

92 | 339
96 | 278

92 | 339
100 | 203

92 | 339
133 | 473

92 | 339
137 | 528
137 | 546

92 | 339
144 | 447

[Reed v. Mayor & Aldermen of Birmingham.]

ing streets are designated as his boundaries, perfects the dedication, and estops him from disputing its acceptance by the public.

3. *Statutory bar in favor of nuisance.*—The statute of limitations of ten years is no bar to a suit by a municipal corporation to enjoin and abate a permanent obstruction of a public street as a nuisance.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was field on the 8th day of March, 1890, by the Mayor and Aldermen of the city of Birmingham, against Charles H. Reed; and sought to enjoin and abate an obstruction in the streets of the city, as a public nuisance. The defendant demurred to the bill, assigning several grounds of demurrer; and the decree overruling his demurrers is now assigned as error.

R. H. PEARSON, for appellant.—1. There can be no dedication to the public except by acceptance by use or otherwise. *Johnson v. Moore,* 87 Ala. 220; 8 Ohio, 444; 32 Ill. 279; 57 Ill. 371; 94 Ill. 25; 106 Ill. 353; 107 Ill. 218. 2. The rights of the city are barred by the statute of limitations. 5 Amer. & Eng. Corp. Cases 450. 3. The city is equitably estopped from the relief prayed for.—46 Ind. 15; 91 Ind. 333; 92 Ind. 107; 49 Ind. 650; 79 Ill. 25, 91 Ill. 251; 92 Ill. 225; 2 Lea (Tenn.) 694; 11 Lea, 38.

CABANISS & WEAKLEY, *contra.*—1. The complainant has the right to file and maintain the present bill.—*City of Demopolis v. Webb,* 87 Ala. 659. 2. Where the owner of property, who has laid off his lands into lots with streets, avenues and alleys, sells the lots with reference to said plat, such sale will amount to a dedication of the designated streets, avenues and alleys to the public.—*City of Demopolis v. Webb,* 87 Ala. 659; *Evans v. S. & W. R. R. Co.,* 90 Ala. 54; s. c. 7 So. Rep. 758; *Hoole v. Atty. Genl.,* 22 Ala. 190; *Giffin v. Olathe,* 24 Pac. Rep. 470; *Lake View v. Lebahn,* 9 N. E. Rep. 269; *Meir v. R. R. Co.,* 1 Law. Rep. An. (Oregon) 856; *Dubuque v. Maloney,* 74 Am. Dec. 358; *Carter v. Portland,* 4 Oregon, 339. 3. As against the proprietor, a dedication of land for streets and highways may be complete without any act or acceptance on the part of the public.—2 Dillon Munic. Corp., (4th Ed.) § 642; *Harrison Co. v. Seal,* 5 So. Rep. (Miss.) 622; *Land Co. v. Mayor,* 36 N. J. Law, 540; *Demopolis v. Webb,* 87 Ala. 659; *Providence Co. v. Providence Co.,* 12 R. I. 348; *Meier v. R. R. Co.,* 1 L. Rep. An. 856. 4.—The dedication of property to public uses in cities and towns does not require that the cities or towns be incorporated.—*Cincinnati v. White,*

6 Peters 432; *New Orleans v. U. S.*, 10 Peters 662; *Maywood v. Maywood*, 118 Ill. 61; *Fulton v. Dover*, 6 Cen. Rep. 848; *San Leandro v. Le Breton*, 72 Cal. 170; *Jersey City v. Morris Co.*, 12 N. J. Eq. 547; 5 Am. & Eng. Encyc. of Law, 399, 410. 5.—When the General Assembly declared in Dec. 1873, that the corporate limits should be between Ninth Avenue North and Seventh Avenue South, this was a sufficient recognition and acceptance of the highway to make the dedication irrevocable.—*Demopolis v. Webb*, 87 Ala. 659; *Requa v. Rochester*, 45 N. Y. 129; 24 Iowa, 234. 6.—When the limits of a city are extended so as to include a previously dedicated street, the city has the right to have the said street opened, if need be, for public use.—*Meier v. R. R. Co.*, 1 L. Rep. An. 856; *Lake View v. Lebahn*, 9 N. E. Rep. 269; *Maywood v. Maywood*, 118 Ill. 61; *San Leandro v. Le Breton*, 72 Cal. 170; *Fulton v. Dover*, 6 Cen. Rep. (Del.) 848; *Weeping Water v. Reed*, 21 Neb. 261; 5 Am. & Eng. Encyc. of Law, 399, 410. 7.—The statute of limitations constitutes no defense to this bill.—*State v. Mobile*, 5 Porter, 279; *State v. Mayor*, 24 Ala. 701; *Wright v. Moore*, 38 Ala. 593; *Lewis v. Stein*, 16 Ala. 214; *Olive v. State*, 86 Ala. 88; *Cross v. Morristown*, 18 N. J. Eq. 305; *Sims v. Chattanooga*, 2 Lea (Tenn.) 694; *R .R.Co. v. Greene Co.*, 31 Ohio St. 338; *Hoadley v. San Francisco*, 50 Cal. 265; *Mayor v. Morris Co.*, 12 N. J. Eq. 547; *Com. v. McDonald*, 16 Serg. & R. 390; *Burbank v. Fay*, 65 N. Y. 57; *Yates v. Warrentown*, 84 Va. 337; s. c. 10 Am. St. Rep. 860; *Simmons v. Cornell*, 1 R. I. 519; *Henshard v. Hunting*, 1 Gray, 203; *Driggs v. Philips*, 103 N. Y. 77; 2 Dillon Mun. Corp. (4th Ed.) § 667, *et seq.* 8.—The doctrine of estoppel can not be invoked by defendant in this case.—*Steel v. St. Louis & C. Co.*, 106 U. S. 447; *Brant v. Coal & Iron Co.*, 93 U. S. 327; *Henshard v. Bissell*, 18 Wal. 271; 7 Am. & Eng. Encyc. of Law, 12, 15.

STONE, C. J.—In 1871 the proprietors of the land on which the city of Birmingham stand had a survey made, dividing the land into blocks, lots, streets and alleys, for the purpose of selling the lots, and that a city should be built thereon. The owners of the land, projectors of the city, were known as the Elyton Land Company, a private corporation. The site was the prospective crossing of the two great railroads, the South and North and the Alabama and Chattanooga, then in process of construction. Before the survey was made the lines of those two roads were established. They run through a considerable part of the city on parallel tracks their bearing being from northeast to southwest. The blocks of the survey were and

are bounded on all sides by streets, crossing each other at right angles—those running parallel with the railroad tracks being called Avenues, and those crossing them being called Streets. All the streets and avenues were designated by numbers ; the streets from 1 to 39, extending from west to east. The avenues were numbered in two series, each extending from the railroad track, outward. Those on the north, or northwest side of the railroad, from 1 to 18 in number, were and are known as Avenues North. Those on the south, or southeast side, extending from 1 to 15, were called Avenues South. Each of the blocks of the survey, was bisected by an alley way, running parallel with the avenues.

Before the lots were offered for sale a careful plat of the survey was made, which fully sets forth the location and course of the railroad tracks, the various streets, avenues and alleys, and the lots into which the lands were divided. And the names and numbers of the streets were distinctly and legibly marked on the plat or map. Any one examining the plat could not be misled as to the streets, avenues, blocks, alleys or lots. The general width of the streets and avenues was 80 feet. At the time the sale was made, after noticed, a copy of the plat or map described above was kept suspended in the office of the Elyton Land Company for public inspection.

Part of the territory or lots, so surveyed and laid off, were incorporated into the town or city of Birmingham, in 1871. Its southern or south-eastern limit or boundary was so defined as to touch, but not to include Avenue 7, south. In 1873 the charter of incorporation was amended, but the amendment did not change the southern, or south-eastern boundary. In 1881 there was a further amendment of the act of incorporation, and an enlargement so as to include another line of blocks, and extend to avenue 8, south. This includes and for the first time included within the corporate limits, the strip of land, forty feet in width, which is the subject of the present suit. It is the southern or south-eastern half of Avenue 7, south, sometimes called Avenue G, extending from 19th to 20th street. What we have stated and may hereafter state as facts, we derive from the averments of the bill, and from the plat of survey of the city then unbuilt, which has been sent up for our inspection.

In March, 1875, the Elyton Land Company, through its president, contracted with appellant Reed to sell to him a lot of ground within the limits of their survey, received half the purchase-money in cash, and gave him bond to make him title on the payment of the balance of the purchase-money, fixed at two years after the date of the purchase. In October, 1879,

[Reed v. Mayor & Aldermen of Birmingham.]

a deed was made to Reed, pursuant to the terms of the bond. The property sold and conveyed is described in the deed as "Beginning at the intersection of centre of Twentieth street and Seventh avenue south, thence westward along said avenue one thousand feet to the centre of Eighteenth street, thence southward along said street four hundred and eighty-four feet, thence eastward at right angles thereto one thousand feet, thence northward along Twentieth street four hundred and eighty feet to the beginning." Interpreting this language in the light of the plat or map, it will be seen the description takes in one half of each of the three streets which bound it north, east and west, viz: Avenue 7, south, and Eighteenth and Twentieth streets. It goes farther: It includes the entire area of Nineteenth street between Seventh and Eighth avenues, south, the alley-ways across the two blocks, extending from Eighteenth to Twentieth street, and, probably, the north half of Avenue 8, south, to the extent of one thousand feet.

Soon after Reed made the purchase, he took possession, and inclosed a part of his purchase with a fence, and has kept up the inclosure ever since. He inclosed the south half of Avenue 7, south, and thus inclosed and occupied up to the line his deed called for. That was about fifteen years before the present suit was commenced, and during all that time he occupied the lot as a residence, and has built an out-house on that part of the inclosure, which is represented on the plat or map as part of Avenue 7, south.

When the survey was made, and when Reed purchased, that portion of the land in which the lots in controversy are embraced, was an old field, and the streets had not been opened or worked as streets. They were shown only on the surveyor's plat. And it is not shown whether at the time of the purchase, any other lots had been sold in that neighborhood. When this bill was filed the neighborhood had been settled up, and it is claimed that Avenue 7, south, had become a necessary highway or thoroughfare for the public convenience. Matters remained thus until the city authorities took action by attempting to have removed from Avenue 7, south, as originally surveyed, the said obstructions placed there by Reed. They first notified him to do so; and he failing to do it, the present bill was filed.

The bill is by the Mayor and Aldermen of the city of Birmingham, and seeks to have the said obstructions removed from the street as a public nuisance. It is skilfully drawn, and presents the appearance of having been framed with great candor. No attempt at concealment is apparent. On

the contrary, it appears to have been the intention of the pleader to present all the facts, as well those which apparently oppose the right of the city to maintain this suit, as those in its favor. This is the appearance the bill presents, when considered by itself; but we can not know what the answer may disclose. It can not be questioned that the bill contains equity, unless there is merit in the objections, to be considered presently. Chancery has unquestioned jurisdiction, at the suit of the city government, to restrain the perpetration or continuance of a nuisance in its public streets, and permanent obstruction of a public street is a public nuisance.—*State v. Mayor etc.*, 5 Por. 279; *City of Demopolis v. Webb*, 87 Ala. 659; *Mayor v. Morris Canal & B. Co.*, 12 N. J. Eq. 547; *Sims v. Chattanooga*, 2 B. J. Lea. 694; *C. & W. Railway Co. v. Witherow*, 82 Ala. 190, and authorities cited; 1 High on Inj., § 816; 3 Pom. Eq., § 1349; *Cross v. Mayor*, 18 N. J. Eq. 305.

The defendant interposed many grounds of demurrer, all of which were over-ruled by the chancellor. From that ruling the present appeal is prosecuted. We will consider only two questions raised by the demurrers.

It is objected by the defendant that, according to the averments of the bill, there never was a complete dedication of the street in controversy; that the survey and plat were but an offer of dedication, which did not and could not become an accomplished fact, until acceptance was shown; that till acceptance, it remained a revocable offer, and that the sale to Reed, before acceptance by the public, of part of the land designated as a street, was revocation *pro tanto* by the Elyton Land Company, and vested a title in the purchaser freed from any claim the city could assert.

One expression in *Moore v. Johnston*, 87 Ala. 220, is mainly relied on as supporting the contention, that the offer to dedicate to the public Avenue 7, south, was revoked by the sale and conveyance to Reed, before there was any acceptance of the offer, express or implied. The subject of controversy in that case is not perceived to be distinguishable from the one presented in this. The lots are distant from each other only two blocks, each fronts on Avenue 7, south, or Avenue G, as it is sometimes called, and each, when the several lots were sold, was outside of the city limits, as then incorporated. The expression is, that "The evidence, in our opinion, supports the view, that the Elyton Land Company, by selling to the centre of Twenty-second street, had narrowed the street at this point, so as to reduce it to forty feet. There can be no valid and complete dedication, without an acceptance by the

[Reed v. Mayor & Aldermen of Birmingham.]

public; and it is not pretended that there was any acceptance in this case, by use or otherwise."

The report of that case does not inform us what was the evidence to which the court referred, in the case from which we have quoted. We, of course, presume it was legal evidence. There could be no legal evidence of the intention of the contracting parties, other than that shown by the writings and the attendant facts.—*Chambers v. Ringstaff*, 69 Ala. 140. The evidence in *Moore v. Johnston* on the question of intention, must have been substantially the same as that shown in this record, with the following exception: Reed, the appellant in this case, purchased and received his title from the Elyton Land Company direct, whereas Moore purchased from Johnston, who could only come in subsequent to the Land Company.

It will be seen by examination that the expresssion we have quoted was not necessary to the decision in the case of *Moore v. Johnston*, nor was the decision rested mainly, if at all, on the principle. Continuing, the opinion says: "But the plaintiff here visited the premises, and saw the land as inclosed by a fence. The contracting parties thus treated this fence as constituting the western boundary line of the street, and the eastern boundary line of the lot.

.    .    .    .    .    .    .    .    .    .    .

There may possibly be purchasers of lots who could successfully challenge the right of the Elyton Land Company to lessen the dimensions of this street; but the plaintiff is in no condition to do so, being himself the purchaser and occupant of this portion of the narrowed street. The plaintiff, moreover, in any event, is the owner of the *fee* to the centre of Twenty-second street, which he acquired by virtue of his deed from Johnston. Conceding that there was a dedication of the street on the principle of estoppel, the conveyance, nevertheless, in any aspect of the case, carried a *fee* to the centre of the highway, subject only to a future easement in the public. This is the accepted doctrine in Alabama, and in the majority of our States." We may well inquire if the latter principle is not the sounder and true reason on which to base the ruling in *Moore v. Johnston?*

A later case—*Evans v. Sav. & Western Railway Co.*, 90 Ala. 54—raised the question of right to the unobstructed use of a street within the surveyed limits of the city of Birmingham. In that case, as in this, the street was outside of the boundaries of the incorporated city, and one question was, whether there had been a complete dedication, so that the public could claim the right to have the street kept free from

obstructions. This court said : "Plaintiff contends, that the Elyton Land Company had dedicated the street to public use, beyond its power of interference, prior to its conveyance of the right of way to the Columbus & Western Railway Company. This contention is founded on the facts, that the map of 1871 does not contain any indication that a portion of the street was intended for railroad uses, and that the company had sold lots on other portions of the street, as far back as in 1874. It can not be questioned that when a land-owner lays out his land into lots, setting apart certain portions as streets, with a view of establishing a town, a sale of lots with reference to a map defining and delineating the streets, is a complete dedication to the use of the purchasers and the public. Such dedication, when complete, is irrevocable, and divests the owner of the right to pervert the street from its original purpose, or to impose an additional, inconsistent servitude. But the mere laying out of lots, and making a map showing streets, do not of themselves deprive the owner of the right to use the property as his own. There must be an acceptance of the dedication, of which the sale and purchase of lots is sufficient proof. The sales and conveyances of lots, describing the streets as boundaries, constitute covenants with the purchasers, that the streets are dedicated to their use, and to the use of the public."

If the question be raised, how many, or to what extent sales must be made to place the offer to dedicate beyond the power of revocation, it would seem that, on principle, a single sale must have this effect. It certainly becomes a binding agreement, or covenant with the one purchaser, and as to him the street becomes dedicated, and the grant or concession irrevocable. And the same act must complete the dedication to the public, for the dedication is not for private use, but for public accommodation. *Ex vi termini*, the term dedication imports that it is for the use of the public, and no one can claim a right to enjoy the easement, except as a constituent member of that public. It is is a public easement, not a private franchise.

At the same term at which *Moore v. Johnston*, was decided, the opinion being delivered by the same member of this court, as then constituted, the case of the *City of Demopolis v. Webb*, was decided.—87 Ala. 659. In that case, as in this, the municipal corporation was the party complainant, and the alleged obstructions of a public street the grievance complained of. This court said : "It is objected, among other things, that the allegations of the bill fail to show that Arch street was ever laid off, or opened as a street, and in use as such prior to the obstruction. In answer to this we may observe, that the bill

alleges with sufficient certainty a dedication of the street to the public use, and the acceptance of such dedication by the city authorities; and the defendants occupy an attitude which estops them from denying the existence of this street as a municipal highway. The dedication itself was made by the owners of the soil, in the clearest and most unmistakable manner, by surveying and mapping out a town, under the name of the town of Demopolis. This town they laid off into streets, blocks and lots, by marking them on this map or plat. Among these recognized highways was Arch street, the one here in controversy. The lots in said town were all described and sold with reference to this plat, including certain lots occupied by the defendant Webb, adjacent to or fronting on Arch street, upon which a warehouse has been constructed by the proprietors, his co-defendants, from whom said Webb rents the premises. Improvements have been made and a town built up with reference to this plat, and upon the faith of an implied covenant on the part of the dedicators that the highways and streets described shall always remain open for public use. . . . Under all the authorities, and upon every sound principle, this was a dedication of Arch street as described on the map."

The bill in this case avers that, at the time of his purchase, Reed had knowledge of the survey and plat. The paper writing he took, evidencing his purchase, describes the lot as "Beginning at the centre of intersection of twentieth street and Seventh Avenue, south." Continuing the description, the deed employs this language : "Thence westward along said avenue," &c. "to the centre of Eighteenth street, thence southward along said street," &c. The beginning and turning points of the lot sold are described as being in the centres of the streets named, and the lines necessarily run along the centres of the streets. These descriptive clauses establish four propositions : First, that the lot was sold with reference to the survey and map. Otherwise, neither the beginning point nor the lines could be discovered or traced, and the contract would be void for uncertainty in the description. Second, that Reed knew of the survey and plat. To suppose otherwise is to convict him of purchasing a lot of land, without knowing where it lay. Third, that he knew of the existence of Eighteenth and Twentieth streets and Avenue Seven, South, and knew where the centres of those streets were, for those centres are made the boundaries of the lot he purchased. And, Fourth, that the corners and lines of his purchase were in the centre of the streets named, which they could not be, if the effect of his purchase was to divert half their area from the public highway or

street, and make it a part of his private free-hold.  To yield his contention would be, not to place his boundaries in the centres of the streets, but to narrow the streets to half their width, and make their changed borders the lines of his lot. This would be, not to uphold the description as given in the deed, but to disregard both its express provision, and the manifest purpose the parties had in view.

We hold that Reed purchased with reference to the map or plat of the surveyor, and that he is estopped from disputing the existence and width of the streets, as originally surveyed and mapped.   We hold further that, when he entered into his purchase with reference to the surveyor's plat, even if he was the first lot-purchaser in that part of the survey, he thereby perfected the offered dedication, and established the streets, at least those contiguous to his purchase, as public highways. *City of Demopolis v. Webb*, 87 Ala. 659 ; *M. E. Church v. Mayor*, 47 Amer. Dec. 696, and note ; *Mayor v. Morris Canal & B. Co.*, 12 N. J. Eq. 547 ; *Sims v. Chattanooga*, 2 B. J. Lea. 694; *Com. v. McDonald*, 16 Serg. & R. 390; *Maywood v. Village of Maywood,* 118 Ill. 61 ; 5 Amer. & Eng. Encyc. of Law, 400, *et seq.*   Reed by his purchase acquired the ultimate *fee* in the soil to the middle of the streets, but he acquired it subject to the city's unobstructed use of it as public streets or thoroughfares.

A second ground of demurrer to the bill in this case, is the statute of limitations.   The bill shows on its face that, for more than ten years before this suit was instituted, the defendant took possession of the strip of land claimed to be a part of the street, inclosed it with a fence, and has held possession of it, as of right, ever since.   Ten years adverse holding, under our statute, bars entry upon real estate, unless the case is brought within some of the exceptions.

To block up or unduly obstruct a public street, is a public nuisance, and chancery, at the suit of the corporation, will enjoin its continuance.   Is the statute of limitations a bar against such relief ?   It would be needless to attempt to reconcile the authorities on this question.   In *Wright & Rice v. Moore*, 38 Ala. 593; this court said, "We deem it proper to remark that there can be no prescription for a public nuisance."   This was probably *dictum*, but the following numerous and highly respectable authorities assert the same doctrine.—*People v. Cunningham*, 1 Denio, 524 ; *Burbank v. Fay*, 65 N. Y. 57; *Driggs v. Phillips*, 103 N. Y. 77 ; *Henshaw v. Hunting,* 1 Gray, 203 ; *Com. v. Upton*, 6 Gray, 473 ; *Cross v. Mayor*, 18 N. J. Eq. 305 ; *Yates v. Town of Warrenton*, 84 Va. 337 ; *Railroad Company v. Com'rs. of Greene Co.*, 31 Ohio St. 338 ; *Sims v.*

[Bradford v. Mayor & City Council of Anniston.]

*City of Frankfort*, 79 Ind. 446; *Rhodes v. Whitehead*, 27 Tex. 304; *Simmons v. Cornell*, 1 R. I. 519; *Hoodley v. San Francisco*, 50 Cal. 265; *Rung v. Shineberger*, 2 Watts, 23; s. c. 26 Amer. Dec. 95; *Queen v. Brewster*, 8 Up. Con. C. P. 208; *Lewis v. Stein*, 16 Ala. 214. The doctrine was broadly asserted in *Olive v. State*, 86 Ala. 88.

That learned jurist and law writer, Judge Dillon—2 Mun. Corp., § 675 (533)—after noticing the conflict of authorities on the question, gives his own views as follows: "Municipal corporations, as we have seen, have, in some respects, a double character, one public, the other (by way of distinction) private. As respects property, not held for public use, or upon public trusts, and as respects contracts and rights of a private nature, there is no reason why such corporations should not fall within limitation statutes, and be affected by them. . . . . But such corporation does not own and can not alien public streets or places, and no mere *laches* on its part, or on that of its officers, can defeat the right of the public thereto. . . . The author can not assent to the doctrine that, as respects public rights, municipal corporations are impliedly within ordinary limitation statutes."

And in a valuable late work—the law of Roads and Streets, by B. K. & W. F. Elliott, p. 490—is this language: "There can be no rightful permanent possession of a public highway for private purposes; and although a right to maintain a private nuisance may, in some cases, be acquired by prescription, no length of time will render a public nuisance, such as the obstruction of a highway, legal, or give the person guilty of maintaining it any right to continue it to the detriment of the public."

We hold that the present proceeding is not barred by the lapse of time, and the decree of the chancellor is affirmed.