# Weiss, *et al.*, *v.* Taylor, *et al.*

## *Bill to Abate Nuisance.*

[DECIDED NOV. 23, 1905, 39 So. REP. 519.]

1. *Nuisance; Public Streets and Alleys; Jurisdiction of Chancery.* The permanent obstruction of a public street or alley-way is a public nuisance, and a court of chancery has jurisdiction to enjoin such a nuisance.

2. *Same; Parties; Special Interest.*—The heirs at law of the original owner of a burial lot in a cemtery, which lot abuts on a public street or alley-way, and in which members of the family are buried, have such a special interest as to entitle them to maintain a bill to remove obstructions in the thoroughfare adjoining the lot.

3. *Dedication; Acts Constituting.*—Land dedicated to a city for use as a cemetery which had been mapped and platted into lots, streets and alleys, and the lots therein sold according to the map and plat of lots and thoroughfares, is a dedication of the streets and thoroughfares to the public, and to the use of persons purchasing such lots.

4. *Nuisance; Public; Limitations.*—The statutes of limitation are no defense to a bill to abate a public nuisance.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by George W. Taylor and others against Julius A. Weiss, as administrator. From a decree in favor of complainants, defendant appeals. This was a bill to open an alleyway between lots in a cemetery and to remove obstructions therein, and for injunction against maintaining obstructions therein. It was submitted on an agreed statement of facts as follows: The parties to this cause agree that the following are the facts thereof, and that the same be submitted for final decree on the original

bill and the answer of the defendants filed on the 19th day of June, 1900; that the complainants are the children and grandchildren and only heirs at law of the late Edward F. Taylor; that said Edward F. Taylor departed this life intestate on the 4th day of November, 1862; that on the 16th day of January, 1848, the late A. V. Scott and Chas. T. Pollard conveyed and dedicated as a public cemetery the lands known as the "Oakwood Cemetery" in the city of Montgomery, described in said deed as "four acres immediately east and in the rear of the present burying grounds in the city of Montgomery, to have and to hold to the aforesaid city council of Montgomery and their successors, in perpetual use for a public burying ground the aforegranted premises;" that within a few months after such dedication and conveyance the city council of Montgomery caused to be made a map and plat of said land so dedicated, and sold lots according to said plat; that by said map the land so dedicated was laid off with alleys and roadways, for the passage of the public on foot and in conveyances; that all of said lots were sold or given away by said city council according to the plat or map to divers persons; that in the year 1855 the said Edward F. Taylor purchased a burying lot in the lands so conveyed and dedicated, the same being known and described as "lot No. 2 in square No. 9 in said map;" that according to said plat or map, and as a matter of fact, there was, at the time of purchase by said Taylor and for many years thereafter, an alleyway six feet wide, laid off and dedicated as a public way, between lots 1 and 2 in square 9; that said lots were each 15 feet wide by 20 feet long, and separated from each other by an alleyway six feet wide; that said lot No. 1 was bought by the late Stephen P. Schuessler, the ancestor of all the defendants, except the defendant Weiss, who was appointed administrator of Schuessler; that in 1855, in February, Thomas Taylor, a son of said Edward F. Taylor, died and was buried by said Edward F. Taylor in said lot No. 2; in January, 1856, Anne F. Taylor, wife of said Edward F. Taylor, died and was interred by said Edward F. Taylor in said lot No. 2; in October, 1860, E. F. Taylor, Jr., a child of Edward F. Taylor, died and

was buried in said lot; in April, 1861, Anne, a daughter
of said Edward F. Taylor, was buried in said lot; in
1862, the said Edward F. Taylor died and was buried
in said lot; that after the death of the father the rest of
the family, consisting of four children, left the city of
Montgomery and never returned to reside there, but
two of them have resided in Alabama ever since 1869, but
not in the city of Montgomery; that the said Stephen P.
Schuessler, after his purchase of lot No. 1, buried sev-
eral members of his family on said lot; that in the year
1870 the said Stephen P. Schuessler, who was then a
member of the city council of Montgomery, applied to
the city council of Montgomery for permission to close
up the alleyway between lots No. 1, his own lot, and lot
No. 2, the lot belonging to complainant's as heirs of
their father and grandfather, respectively, and to inclose
and include said alleyway as a part of lot No. 1; that
such permission was granted by said city council, but
without notice to any of these complainants or those
through whom they claim; that after such permission
was given, and more than twenty years before the filing
of this bill, the said Schuessler did take in and inclose,
along with lot 1 as formerly purchased by him, the said
alleyway between said lots 1 and 2, so that the dividing
line between said lots 1 and 2 is the brick wall of lot No.
2, as repaired and reconstructed by said Schuessler, and
so that lot No. 1 includes all of said alleyway and 1 5-10
feet off of the western side of lot No. 2, belonging to
complainants and embraced in said wall. A correct plat
of said lots, their immediate surroundings, and original
widths of said lots and alleyways, and their present con-
dition in reference to each other, is shown in the plat
marked "Exhibit A," and attached to the original bill.
After the said alleyway was so enclosed by said Schues-
sler, two children of the defendant Weiss, who were
grandchildren of the wife of said Stephen B. Schuessler,
were buried in said alleyway, and their bodies still rest
there. It is further admitted that complainant George
W. Taylor, who has continuously resided in Alabama
since 1869, in his own behalf and in behalf of the other
complainants, has within the last few years made several
demands on the defendants to reopen said alleyway, but

[Weiss, *et al.* v. Taylor, *et. al.*]

defendants have refused to do so entirely, but have proposed in good faith to withdraw the western wall of said lot 1, as now constructed, 18 inches west, but complainants refused to accept such proposition and insisted on the restoration of the said alleyway, as formerly laid off and platted as aforesaid; that a short time before the bringing of this suit complainants applied to the city council of Montgomery to remove the wall from said alleyway and to restore the same to its original condition between said lot 1 and 2, but the said city council refused to grant such request; that the entrance to the Taylor lot, No. 1, is on the alley line between said lots and what is known as the "Clanton lot," being lot No. 3, as shown by the plat attached to the original bill and marked "Exhibit B" to said bill; but that the closing of said alleyway does not obstruct a free and easy approach to said lot No. 2 on the other side thereof.

J. M. CHILTON and A. A. WILEY, for appellants.—In the absence of the note of testimony entered on the minutes as required by rules 77 and 78 of chancery practice, neither the evidence or the agreed statement of facts was before the chancellor, and there was nothing upon which to predicate his decree. The answer puts in issue the facts upon which the equity of the bill if it has any should depend.—*Reese v. Barber*, 85 Ala. 474; *Hearn v. Council*, 100 Ala. 200. The answer denies or puts in issue averment of the bill, and without proof to support it, the bill fails.

The bill is without equity; and of course its equity may be questioned for the first time in this court.

(a) Schuessler had been in possession of the alleyway largely over 20 years before the present bill was filed. *The complainants confessedly, are barred both by limitations and laches, unless they are in a position to invoke the doctrine that time nor estoppels run against the State.*

We say they are not in a position to avail themselves of this exception which exists in favor of the sovereign and which, for the purposes of this argument, (for the present) we may add, as well applies to cities, as a part of the State.

[Weiss, *et al.* v. Taylor, *et. al.*]

There are three reasons why they may not invoke this doctrine:

1st. They can stand on no higher ground than the city, and if the city would be estopped from invoking the doctrine, they are estopped.

While it is said to be the general rule that the State cannot be estopped, it is added by way of exception, in that standard work, Elliott on Streets and Roads, Sec. 883, that an estoppel does not arise "at least where the city or local authorities have done no affirmative act to mislead the complainant.' In short, while acquiescence cannot estop, yet affirmative action which, if repudiated, would work injury to the claimant, does estop.

What action, we enquire, could be stronger than the consent of the city, expressed through its council? The answer and the agreed facts both show that the city consented to the appropriation of the alley by Schuessler, and that acting on this, Schuessler built his walls and fences and that his descendants have since buried their dead there.

2nd. But the complainants, in addition to showing that the city could abate the status as a nuisance, must also show that they, the complainants, have an existing private right in regard to the subject matter.

It will be seen that in the cases of *Webb v. Demopolis,* 95 Ala. 116 and *Reed v. Birmingham,* 92 Ala. 339, *the City itself was the actor.*

When, however, an individual becomes the actor, and attempts to assert the rights of the State or of the municipality, he must show, *in addition, an existing private right on his own part.* And if he is barred in his private right by laches or by the statute of limitations, he can never reach the point of invoking the right of the State from exemption from the statute of limitations or the doctrine of laches. In short: In a direct proceeding by the State, the only fact necessary to enable the State to invoke the exemption, is a dedication, with all that the term implies in the way of acceptance, etc.

But when an individual attempts to invoke the right of a State, he must show two things: First, an existing private right in himself, and second, a *complete* dedication.

[Weiss, *et al.* v. Taylor, *et. al.*]

If he has waited until the statute of limitations has perfected a bar of his private right, or until circumstances have intervened which make it inequitable that the court should grant him relief as to his private right, he fails in his case. He has no existing private right and in the absence of such a right, cannot invoke the right of the public.

This distinction was not brought to the attention of the court below, as is apparent from the record.

That it exists and has its foundation in the settled analogies of law, there is no question.—Am. & Eng. Encly. Law (2nd ed.) Vol. 21, pp. 733-4; notes 3 and 5 and cases there cited.

3rd. It does not appear from the bill or the admitted facts that the lot was dedicated. While it shows an intent to dedicate on the part of the owner, it does not show any act amounting to acceptance.

The bill alleges that the cemetery was laid off into lots, blocks, streets and alley-ways, and attaches a diagram showing the manner in which it was laid off. But there is no averment that the alleyway was ever used or that the city fended it or did any other work upon it. In other words, a mere act of dedication is alleged without any user or acceptance on the part of the city, except that it sold lots as per the map or plat. Without acceptance or user, the dedication was imperfect, and the statute of limitations and the doctrine of laches are applicable.

Even where there has been an express dedication of land by the owner, there must be an acceptance, and the acceptance arises only "when the public authorities recognize the existence of the highway and assume control of it by improving or repairing it."—*Stewart v. Conley,* (2nd head-note) 122 Ala. 179.

There is not a line in the bill or evidence, which discloses that the city ever did a single act in the way of accepting the dedication. If there is any allegation in the bill on this subject, it is a mere conclusion, no facts being stated. And when the evidence admits the dedication, it cannot be regarded as admitting more than the bill alleges, and there is, therefore. nothing in the evidence to show any acceptance on the part of the city.

Consistently with the pleading and the evidence, the cemetery was platted, after an intended dedication by the owner. Here the whole matter rested until Weiss began burying his dead in the lot, and has ever since rested for over 30 years, until the Taylors, in 1897, first began to object to interments in the alleyway.

4th. Furthermore, this is the case of a grave-yard. It is implied in every such matter, that the party must not abandon his lot so as to let it become apparently unused. If no statute of limitations runs, there is a remote descendant of both or all these parties who could oust them both of their lots on the ground that in the remote past some of his relatives or ancestors had been buried there. It is doubtful whether there is any spot 3x6 on the habitable part of the globe where some one in the history of the earth, has not been buried. There must be *some* time when ground once devoted to burial purposes, must be presumed to have been abandoned. Here, no attention was paid to the Taylor graves for 20 years and over, except such as Schuessler and Weiss themselves gave them, with the present reward.

It is doubtful whether the same principles of exemption of the State from the doctrine of laches should, on reason, apply to an alley in a cemetery, which at last is more for the convenience of the lot owners than the public who have streets provided for its use.

GORDON MCDONALD and TERRY RICHARDSON, for appellee.—"Chancery has unquestioned jurisdiction to restrain the perpetuation or continuance of a nuisance in a public street, and a permanent obstruction of a public street is a public nuisance."—*Reed v. Birmingham*, 92 Ala. 339; *Demopolis v. Webb*, 87 Ala. 659; 1 High Inj. § 816; 3 Pom. Eq. Jur. Sec. 1349.

When lots are sold with reference to a recorded plat a dedication is perfected of the streets and alleys of such plat, and the purchaser accepts the official dedication, and establishes streets contiguous to his purchase.—*Reed v. Birmingham*, 92 Ala. 339; *Demopolis v. Webb*, 87 Ala. 659; 5 Am. & Eng. Ency. 400.

[Weiss, *et al.* v. Taylor, *et. al.*]

The statute of limitations will not bar relief against the perpetuation of a nuisance.—*Wright v. Moore,* 38 Ala. 593; *Reed v. Birmingham,* 92 Ala. 339; *Olive v. Starke,* 86 Ala. 88; Dillion Mun. Corp. Vol. 2 Sec. 675; Elliot on Roads and Streets, page 490.

DOWDELL, J.—The appeal in this case is taken from a final decree of the city court. The cause was submitted for final decree upon the pleadings and agreed statement of facts. We think there can be no doubt that the complainants have such special interests in the subject-matter as would authorize them to maintain the bill. Unquestionably the court of chancery has jurisdiction to enjoin a public nuisance and the permanent obstruction of a public street is a public nuisance.—*Reed v. Birmingham;* 92 Ala. 339, 9 South. 161; *Demopolis v. Webb,* 87 Ala. 659. 6 South. 408; High on Injunctions, § 816; 3 Pomeroy, Eq. Jur. § 1349.

When lots are sold with reference to a recorded plat, a dedication of the streets and alleys, as laid out in such plat, is perfected, and on the undisputed facts in this case, there can be no doubt as to a dedication of the alley in question.—*Reed v. Birmingham, supra; Demopolis v. Webb, supra;* 5 Am. & Eng. Ency. Law, 400.

The statute of limitations is no defense to a bill filed for the abatement of a public nuisance.—*Wright v. Moore,* 38 Ala. 593; *Olive v. State,* 86 Ala. 88, 5 South. 653, 4 L. R. A. 33; *Reed v. Birmingham, supra;* Dillon on Munic. Corp. Vol. 2, § 675; Elliot on Roads and Streets, p. 490.

There is no error in the decree appealed from, and the same will be affirmed.

HARALSON, ANDERSON, and DENSON, JJ., concur.