(76 South. 360)

### KERLIN et al. v. RAMAGE et al.
### (3 Div. 166.)

(Supreme Court of Alabama. May 31, 1917. Rehearing Denied June 30, 1917.)

CEMETERIES ⊂⊃15—MORTGAGE OF LOT.

A mortgage of one's lot in a public cemetery may not be declared or enforced.

Anderson, C. J., and McClellan and Gardner, JJ., dissenting.

Appeal from City Court of Montgomery; Gaston Gunter, Judge.

Suit by E. C. Ramage and others against Bernice E. Kerlin and others. From an adverse decree, defendants appeal. Reversed and remanded.

Hill, Hill, Whiting & Stern, of Montgomery, for appellants. W. F. Thetford, Jr., and Blakey & Strassburger, all of Montgomery, for appellees.

PER CURIAM. Complainant's (appellee's) bill shows that W. J. Kerlin during his lifetime was the owner of a lot in Oakwood Cemetery in the city of Montgomery, "which said lot," to quote the bill, "was used by said W. J. Kerlin for burial purposes"; that he sold to said Kerlin certain granite slabs, vases, bases, and Bedford coping stone, and used the same in improving the said lot under and in pursuance of a contract in writing which provided, among other things, as follows: "Title to work herein mentioned shall remain vested in builder [complainant] until fully paid for;" and that Kerlin died without paying for said materials and improvement. The widow and daughter of Kerlin, his sole heirs, are made parties defendant, and the prayer is that a sale of the lot be decreed for the satisfaction of complainant's debt.

The theory of the bill is that, since complainant cannot maintain detinue for the slabs, vases, bases, and coping stones used in the improvement of the lot, because they have been attached to and become a part of the realty, nor can maintain trover because there has been no wrongful conversion, nor can have a lien under the materialman's statute, because he has not parted with title, the clear intent and meaning of the contract to create a security in some sort can only be made effectual by a decree declaring the contract, by which he retained title, an equitable lien or mortgage in his favor on the materials so furnished and upon the lot into which they have been incorporated—this in accordance with the doctrine of Ross v. Perry, 105 Ala. 533, 16 South. 915, and the cases there cited.

The court is of the opinion that the doctrine of Ross v. Perry should have no application in the circumstances of this case. The relief complainant seeks can be effectuated only upon consideration that the title to the soil of this lot be exposed to public sale and that the purchaser be invested with the right to dispossess the dead who rest there. We assume—we are justified on the averments of the bill, though they are peculiarly uncommunicative on this point, in assuming against the pleader on demurrer—that Kerlin, or perhaps some one from whom he took by inheritance, had acquired the lot in question as a part of a larger tract which was devoted to use as a public cemetery and laid off into convenient lots for that purpose. In Bessemer Land & Improvement Co. v. Jenkins, 111 Ala. 135, 18 South. 565, 56 Am. St. Rep. 26, this court quoted with approval the following language which had been used by the Supreme Court of New Hampshire in Page v. Symonds, 63 N. H. 17, 56 Am. Rep. 481, in reference to the right of burial in a public cemetery:

"Such right of burial is not an absolute right of property, but a privilege or license, to be enjoyed so long as the place continues to be used as a burial ground, subject to municipal regulation and control, and legally revocable whenever the public necessity requires."

In Anderson v. Acheson, 132 Iowa, 744, 110 N. W. 335, 9 L. R. A. (N. S.) 217, the Supreme Court of Iowa, citing and quoting from many cases, says:

"The courts quite generally hold * * * that the purchaser of a lot in a public cemetery, though the deed be absolute in form, does not take any title thereto. The mere privilege or license to make interments in the lot so purchased, exclusive of all others, is all that is acquired thereunder."

To the same effect is the text of 5 R. C. L. § 10, pp. 244, 245, where many cases are cited. And see the cases collected in a note to 6 Cyc. 717.

This rule of law proceeds from the sound sentiment of all civilized peoples, which regards the resting place of the dead as holy ground and requires that in some respects it be not treated as subject to the laws of ordinary property; and hence it is held by the courts quite generally, on grounds of public policy, that, while the purchaser or licensee takes a property right, which the law will recognize and protect against invasion as long as the place continues a burying ground (111 Ala. 135, 18 South. 565, 56 Am. St. Rep. 26), and which will descend to his heirs, impressed with and subject to the use to which he has devoted it in his lifetime (Kingsbury v. Flowers, 65 Ala. 479, 39 Am. Rep. 14), he acquires no such interest or right of possession as will support an action of ejectment, for "within these hallowed precincts no court would desire to send the sheriff with a writ of possession." Stewart v. Garrett, 119 Ga. 386, 46 S. E. 427, 64 L. R. A. 99, 100 Am. St. Rep. 179; 6 Cyc. 717, note. Nor can a lot in which human bodies have been interred ever become the subject of administration (Kingsbury v. Flowers, supra), or partition, nor can it be mortgaged for the security of debts (Anderson v. Acheson, and 5 R. C. L., supra).

While our statutes exempting lots in cemeteries from taxation, and from levy and sale under execution or other process, do not of themselves lead necessarily to the result that no mortgage of such property may be declared or enforced, they help to demonstrate a policy which leads to that result. The court does not consider that the decision in Bonham v. Loeb, 107 Ala. 604, 18 South. 300 conflicts with the holding here, which is that complainant's bill, on the considerations set out above, is without equity.

Reversed and remanded.

MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur.

McCLELLAN, J. (dissenting). Unless the established public policy of this state forbids the imposition of an equitable lien or mortgage on a plot of land devoted to burial purposes, the bill, filed by the appellees, has equity under the apt authority of Ross v. Perry, 105 Ala. 533, 16 South. 915, and, in consequence, the court below ruled to a correct result.

The public policy of a state is generally expressed by statute or Constitution. In the absence of those means of expression of a definite public policy, it may be found in the decisions of the courts, and, in peculiar circumstances, in the course of administration of the government. 4 Words and Phrases, 2d Series, pp. 27–29; Harding v. Amer. Co.,

182 Ill. 551, 55 N. E. 577, 64 L. R. A. 738, 74 Am. St. Rep. 189, 213. See United States v. Trans-Mo. Ass'n, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007. There is in our Constitution or statutes no manifestation or expression of a public policy which forbids the sale or incumbrance, by the owner, of lands devoted to burial purposes. The owner's right to sell, or otherwise dispose of, plots devoted to burial purposes, has not been restricted or restrained by the Constitution or statutes of this state. Code, § 4163, has no such effect. That section is an exemption statute, pure and simple (Kingsbury v. Flowers, 65 Ala. 484, 39 Am. Rep. 14), only effecting to invest the owners of the characters of property therein described, of which a burial place is one, with the privilege of claiming them as exempt from levy and sale under process. That statute is materially different in its terms and in its effect from the statute considered in Richardson v. Kaufman, 143 Ala. 243, 39 South. 368, where the process of garnishment of wages, within defined limits and under prescribed conditions, was expressly taken away. In Kingsbury v. Flowers, supra, this court interpreted the substance of the statute (section 4163) to this effect: "This statute exempts from liability for the payment of debts * * *" the properties described in section 4163. The substantial readoption of the statute in the Codes of 1886, 1896, and 1907 served to bring it down to us impressed with the construction put, in Kingsbury v. Flowers, upon the like provisions of section 2823 of the Code of 1876. Certainly it is not soundly possible to accord to a mere exemption statute the effect of restraining an owner's right to sell or incumber property devoted to burial purposes, much less of expressing a measure of public policy against the sale or incumbrance thereof. Furthermore, it was expressly ruled here, in Bonham v. Loeb, 107 Ala. 604, 608, 18 South. 300, a decision delivered more than 20 years ago and manifestly operating to establish a rule of property, that a conveyance of a tract of land, in and of which there was a long used burial plot, without "reservation of title or possession to any one of the burial place referred to," operated to pass and invest the legal title to the burial place, and that, on the evidence there presented, including the showing that the plaintiff's husband and children were rightfully buried in a lot in the burial area, no title by adverse possession was shown. It thus appears that, if this state has any public policy in the premises, it is directly opposed to any restraint of the power of the owner to alienate or incumber burial plots. To what extent a burial plot, already devoted to such uses, has impressed upon it a trust character as stated in Kingsbury v. Flowers, 65 Ala. at page 484, 39 Am. Rep. 14, when descending to the owner's heirs, is a question not presented or involved on this appeal; the allegations being that the contract here in question was made with the owner.

There is no sound ground for distinguishing a case where the owner in fee contracts for the improvement of, or with reference to, his lot in a public cemetery, and a case where his lot, so owned, is a part, or constituted all, of a burial ground not public. It is urged that, because the title to the "work," described in the contract, was retained until paid for, the appellees have in the action of detinue an adequate remedy at law. It appears from the averments of the amended bill and in the contract that the "work" not only included materials, but also service, labor, and borrowed earth, all of which went to improve, if not to beautify, the burial lot. Detinue only avails to give possession of chattels that are capable of being identified. The contract shows that not only were granite slabs and vases to be furnished, but also that "one Bedford stone wall, to level lot to high corner of lot," and that the lot "be filled with dirt to bottom of coping," should be put in and upon the lot. It is manifest that the action of detinue could be, at most, only partially available to restore to the appellees that which they had put upon and in the burial lot. Obviously, detinue would not afford appellees an adequate remedy. The building of the wall and the filling in with earth, stipulated in the contract, made it impossible to effect the removal of the materials and earth without destroying the lot, which, it is at least inferable, was not level.

It is settled with us that parties may so agree as to prevent chattels to be attached to real property from becoming a part thereof, when, without such agreement, they would lose their character as chattels; and this upon the theory that the parties, at least the party furnishing the chattel to be annexed, intended to prevent the thing attached from becoming a part of the freehold. But there is a limitation upon this right to keep that a chattel which, without agreement to the contrary, would become real property. The existence of the limitation is recognized in Wood v. Holly Mfg. Co., 100 Ala. 326, 347, 13 South. 948, 46 Am. St. Rep. 56, and in Tillman v. De Lacy, 80 Ala. 103, 105, 106; and it is the primary ground of the decision in Ross v. Perry, supra. In definition of this limitation it is said in Ford v. Cobb, 20 N. Y. 344, 350, 351:

"It is conceded that there must necessarily be a limitation to this doctrine, which will exclude from its influence cases where the subject or mode of annexation is such that the attributes of personal property cannot be predicated of the thing in controversy. Thus a house or other building, which from its size or the materials of which it was constructed, or the manner in which it was fixed to the land, could not be removed without practically destroying it, would not, I conceive, become a mere chattel, by means of any agreement, which could be made concerning it. So of the separate materials of a building, and things fixed into the wall, so as to be essential to its support; it is impossible that they should by any agreement between the owners become chattels."

Upon the reason and authority of Ford v. Cobb, supra, it was said in Tifft v. Horton, 53 N. Y. 377, 380, 13 Am. Rep. 537:

"It is well settled that chattels may be annexed to the real estate and still retain their character as personal property. See Voorhees v. McGinnis, 48 N. Y. 278, and cases there cited. Of the various circumstances which may determine whether in any case this character is or is not retained, the intention with which they are annexed is one; and, if the intention is that they shall not by annexation become a part of the freehold, as a general rule they will not. The limitation to this is where the subject or mode of annexation is such as that the attributes of personal property cannot be predicated of the thing in controversy (Ford v. Cobb, 20 N. Y. 344), as where the property could not be removed without practically destroying it, or where it, or part of it, is essential to the support of that to which it is attached."

In Tillman v. De Lacy, supra, this limitation was expressly recognized in these terms:

"It may be regarded as a settled rule that any chattel, permanently annexed to the freehold, and which cannot be severed without material injury to the premises, becomes a part of the realty, *irrespective of the intention with which it was attached*." (Italics supplied.)

In Wood v. Holly Mfg. Co., supra, this court took even more direct account of the limitation, in connection with a reservation to preserve the original character of the chattel against its loss by reason of annexation to the freehold, where it was said:

"But reservation of the right by agreement of the parties is sufficient to remove a house, or machinery, or other like erections, *which in their removal do not materially injure the premises*." (Italics supplied.)

In Ross v. Perry, supra, the bill sought to have declared and enforced an equitable lien or mortgage. Ross furnished lumber and material to Perry, which was used by Perry in the erection of a house on a lot owned by Perry. In the notes for the price of the lumber and material it was stipulated that the title thereto should remain in Ross until the notes were fully paid. This court ruled: (a) That the lumber and material had become a part of the freehold, notwithstanding the reservation of the title by the vendors, having been constituted, as the parties manifestly intended, a part of the house built by Perry on his lot; (b) that trover would not lie, because, as contemplated by the contract, the lumber and material was put in and formed a part of the building; (c) that no materialman's lien came into existence, because Ross never parted with the title to the lumber and material; and (d) that, having thus been cut off from the remedy as for a conversion of the property and from the remedy "for its recovery in specie" and from the remedy accorded by statute to a materialman, Ross "must be held (and such was the manifest contemplation and intention of the parties) to have so retained the title as a security for the payment of the price the defendant" agreed to pay for the material and lumber—in consequence affirming the existence of an equitable lien or mortgage upon the house and the lot.

The conclusion is inescapable that this court's pronouncement in Ross v. Perry was necessarily predicated of the fact, in law, that the reservation of the title to the lumber and material by Ross did not avail to prevent the chattels from losing the "attribute of personal property" when used in the construction, in part, of the building on Perry's lot, and also that the removal of the lumber and material could not be effected, to quote the headnote in Ford v. Cobb, "without serious damage to the freehold, or substantially destroying their own qualities and value." The reason and doctrine on which Ross v. Perry is laid are supported by the New York cases before quoted, 'as well as by our own cases above quoted. The New York Court of Appeals, in People v. O'Donnel, 202 N. Y. 313, 324, 95 N. E. 762, 765, has recently said, as upon the authority of its case of ·Ford v. Cobb:

"The machinery and other equipment, which I have held not to be designated as real property, as I have pointed out, is primarily and essentially personal property. It is only made real property, if at all, by the accidental process of annexation to the realty, and the interested parties may still preserve its original character notwithstanding this latter process. On the other hand, these power. houses were most substantial structures, composed in large measure of brick and stone and steel and iron. They were so constructed on the land that apparently they could only be removed by utter demolition. They were primarily and essentially real property, and never had existence in any other character. They were so fundamentally real property that probably interested parties dealing with them could not, by express agreement, have given them any other character than that of real property."

While it does not appear, with all certainty, from the averments of the bill and the contract exhibited therewith, that the granite slabs and the vases cannot be removed without serious damage to the lot or the practical destruction of their own qualities and value, yet it is evident that the wall and the borrowed earth put there in performance of the contract cannot be taken away without the most serious damage to the lot, even if the elements of the wall and the borrowed earth could be identified; the reservation being of the title to the "work," which at least included all the material necessary to the performance of the contract. The contract was single and indivisible; and the security, afforded by the equitable lien or mortgage put upon the improved lot by the parties, cannot be severed or apportioned. Wood v. Holly Mfg. Co., 100 Ala. 326, 347, 348, 13 South. 948, 46 Am. St. Rep. 56. If the lot was sold in enforcement of the asserted equitable lien or mortgage, it is not to be now anticipated that the purchaser would violate any rule of law or decency in respect of the bodies interred in the lot. Recourse to the books will afford sufficient guide to future proper conduct in that regard, and to the definition of the rights such purchaser would have in the premises. 13 Cyc. p. 266 et seq.; Bessemer Land Co. v. Jenkins, 111 Ala. 135, 18 South. 565, 56 Am. St. Rep. 26; Bonham v. Loeb, 107 Ala. 604, 18 South. 300; Weiss v. Taylor, 144 Ala. 440, 39 South. 519.

Undoubtedly, sensible legislation on such subjects as this contract concerns is at least desirable. As I see it, the courts are without any discretion or power to qualify an owner's right to dispose of or incumber a lot devoted to burial purposes, however much the courts might be disposed to reprehend the judgment of such an owner in subjecting the graves of his dead to rules of law pertaining to the ownership and alienation, by deed or mortgage or other contract, of real estate. I would affirm the decree overruling the demurrer. There is no ground thereof taking the objection that the contract did not describe the lot upon which the improvements were to be put. The bill avers, at least inferentially, that the lot described in the bill is the lot upon which the parties contracted to have the improvements made. Cottingham v. Hill, 119 Ala. 353, 24 South. 552, 72 Am. St. Rep. 923.

Since the foregoing opinion of the writer was prepared—a statement of legal conclusions to which Chief Justice ANDERSON and Justice GARDNER · gave their approval —the opinion per curiam was constructed and has received the approval of the majority of the court. As the dissenting members of the court understand it, that opinion is grounded in the premise that the burial lot described in the bill is a lot in a "public cemetery," and that Kerlin's right therein or thereto was not as owner of the fee when he contracted with appellee, but was only that of one entitled as a licensee for a particular purpose. That doctrine was expressly recognized in Bessemer Land Co. v. Jenkins, 111 Ala. 135, 147, 18 South. 565, 567 (56 Am. St. Rep. 26) where it was said:

"But bodies are most commonly interred in public cemeteries, where the parties, whose duty it is to give them burial, are not the owners of the soil by deed properly executed, and have no higher right, than a mere easement or license."

While the dissenting members of the court of course entertain no doubt of the soundness of the quoted doctrine, they do not think it even possible to apply that doctrine to the case made by this bill. Indeed, the averments of the bill, to be quoted, refute the elements essential to afford the defined bases for the application of the doctrine. In paragraph 3 of the amended substituted bill it is unequivocally averred "that during his lifetime * * * W. J. Kerlin was the owner of a certain lot of land, * * * which is described as follows, to wit: Lot number nine (9), square twenty-nine (29), third survey, Oakwood Cemetery;" and in paragraph 4 it is again averred that Kerlin "was the owner of said lot." (Italics supplied.) There is no allegation in the bill from which it could be even inferred that the cemetery was a "public cemetery." To so affirm, it must be

assumed; and the rule for the interpretation of a pleading against the pleader, on demurrer, has not, we think, heretofore afforded an instance of such an assumption. The word "owner" is a somewhat elastic term, often depending for its meaning upon the connection in which it is employed. Standing alone, the word "owner" signifies, with reference to land, the owner in fee. Phillips v. Hardenburg, 181 Mo. 463, 467, 476, 80 S. W. 891; Coombs v. People, 198 Ill. 588, 64 N. E. 1056; People v. Bennett College, 248 Ill. 608, 94 N. E. 110, 140 Am. St. Rep. 237, 239.

It appears from the contract that Kerlin, the averred owner, engaged the appellee to fill in the lot, raise the surface, and wall it up. These acts are inconsistent with a proprietorship of a mere easement or license in the lot. The allegation of ownership in the bill is that of an unqualified title in the lot. This court, in Bessemer Land Co. v. Jenkins, 111 Ala. 135, 146, 18 South. 565, 56 Am. St. Rep. 26, expressly affirmed the existence of the right to hold the title in fee to the ·soil constituting a burial lot, thus expounding a doctrine opposed· to that accepted in Stewart v. Garrett, 119 Ga. 386, 46 S. E. 427, 64 L. R. A. 99, 100 Am. St. Rep. 179, cited in the majority opinion. Reference to the case of New York Cemetery Co. v. Buckmaster, 49 N. J. Law, 449, 9 Atl. 591, will disclose the error of the Georgia court in distinguishing the New Jersey decision on the ground that the local statute "required" the cemetery company to convey the fee in the sublots. Very differently, the statute empowered the company to convey the fee; and the court held that the fee was conveyed by the deed, not in virtue of the statute. In Hancock v. McAvoy, 151 Pa. 460, 25 Atl. 47, 18 L. R. A. 781, 31 Am. St. Rep. 774, the conveyance was of the right to inter or sepulture—an easement only not the· land itself. If people burying, or who have· buried, their dead in Oakwood Cemetery have unqualified deeds to the soil of the lots in which they have or may hereafter inter their dead (Weiss v. Taylor, 144 Ala. 440, 39 South. 519), and· such deeds are effective to clothe them with an easement or license only, it may be the source of serious surprise to· them and to others that their mere tenancy may be extinguished and a general removal enforced, according to the unescapably logical doctrine thus expressed in Bessemer Land Co. v. Jenkins, 111 Ala. 147, 18 South. 565, 56 Am. St. Rep. 26:

"Of such it is held that they do so under a mere license, and their exclusive right to make such interments in a particular ·lot would be limited to the¯time during which the ground continued to be used for burial purposes; and, upon its ceasing to be so used, all they could claim would be that they should have due notice and an opportunity to remove the bodies to some other place of their own selection, if they so desire, or, on failure to do so, that the remains should be decently removed by others."

ANDERSON. C. J., GARDNER. J.. and the writer are of the opinion that the bill was not subject to the· demurrer, and would, hence, affirm the decree.